Gene E. ROBINSON,
Plaintiff–Appellant,

v.

Chris T. KINNICK and Laura Kinnick,
Defendants–Appellees.

No. 53A01–8908–CV–299.

Court of Appeals of Indiana,
First District.

Nov. 30, 1989.

Rehearing Denied Jan. 11, 1990.

Richard D. Schreiber, Schreiber & Sevenish, Indianapolis, for plaintiff-appellant.

Mark R. Smith, Jennings & Maas, Indianapolis, for defendants-appellees.

BAKER, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Gene E. Robinson (Robinson), appeals the entry of an adverse summary judgment in favor of defendant-appellants, Chris T. Kinnick and his wife Laura Kinnick (the Kinnicks), on his suit to recover for the personal injuries he sustained when he fell from the roof of the Kinnicks' home.

We affirm.

### STATEMENT OF THE FACTS

In late January, or early February, 1985, Robinson was hired by the Kinnicks as an independent contractor to aid in the construction of their personal residence. Specifically, Robinson was hired to perform roofing work on the home. Early in the morning of February 28, 1985, Robinson climbed a ladder in order to get to the back part of the roof where he was to continue shingling that day. Although Robinson observed water, frost, and ice on the roof's surface, he proceeded to shingle. While in the process of carrying a bundle of shingles across the roof, Robinson slipped on

an accumulation of ice, slid down the roof, and fell 26 feet to the ground.

Thereafter, Robinson filed a complaint against the Kinnicks in order to recover for the personal injuries he sustained from the fall. In his complaint, Robinson alleged the Kinnicks had been negligent in failing to provide him with adequate safety equipment or proper supervision and in permitting him to work on the roof when they should have known it was not safe due to the inclement weather conditions. The Kinnicks subsequently filed a motion for summary judgment alleging that they owed no duty to provide Robinson with safety equipment or supervise his work. Further, they asserted that Robinson had superior knowledge of any allegedly dangerous conditions on the roof absolving them of any duty with respect thereto. Following a hearing, the trial court granted the Kinnicks' motion for summary judgment. Robinson subsequently instituted this appeal.

### ISSUES

Robinson raises the following issues for our review:

I. Whether the Kinnicks voluntarily or gratuitously assumed a duty to provide a safe work place to Robinson.

II. Whether the Kinnicks owed a duty to provide Robinson a safe place to work under IND.CODE 22–1–1–10.

### DISCUSSION AND DECISION

■ The rules governing summary judgment are well settled. In reviewing a motion for summary judgment, we apply the same standard as that employed by the trial court. Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Howard v. H.J. Ricks Construction Co., Inc.* (1987), Ind.App., 509 N.E.2d 201, *trans. denied.* The party seeking summary judgment has the burden of demonstrating the absence of a genuine issue of mate-

rial fact. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51. If there is any doubt as to the existence of a material factual issue, the motion should be resolved in favor of the nonmovant. In ascertaining the existence of any doubt, the contents of all pleadings, papers, and affidavits are liberally construed in favor of the nonmovant. *Bell v. Northside Finance Corp.* (1983), Ind., 452 N.E.2d 951. We will reverse only if the record discloses an unresolved issue of fact or an incorrect application of the law to undisputed facts. *Morris v. Lyons Capital Resources, Inc.* (1987), Ind., 510 N.E.2d 221.

■ In his complaint, Robinson asserted the Kinnicks were negligent in failing to exercise due care for his safety. It is axiomatic that in order to recover on a theory of negligence, a plaintiff must establish that there existed a duty on the part of the defendant in relation to the plaintiff. Whether a duty exists is a question of law for the court. *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216. Absent a duty, there can be no actionable negligence based upon a breach of such.

As a general rule, an owner of property is not required to provide an independent contractor with a safe place to work. *Howard, supra; Hoosier Cardinal Corp. v. Brizius* (1964), 136 Ind.App. 363, 199 N.E.2d 481, 486, *trans. denied.* Robinson contends, however, that the Kinnicks gratuitously or voluntarily assumed a duty to provide him with a safe work place. In support of this contention, he cites *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212.

■ A duty of care may arise where one party assumes such a duty, either gratuitously or voluntarily. *Plan–Tec, supra; Clyde E. Williams & Associates, Inc. v. Boatman* (1978), 176 Ind.App. 430, 375 N.E.2d 1138, *trans. denied.* The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Id.* Whether a party has assumed a duty and the extent of that duty, if any, are questions for the trier of

fact. *Perry v. Northern Indiana Public Service Co.* (1982), Ind.App., 433 N.E.2d 44, *trans. denied.*

■ In several instances our courts have determined that there existed sufficient facts of probative value to create a jury question regarding whether a party gratuitously assumed a duty to provide a safe work place to another. *Perry, supra; Plan–Tec, supra; Phillips v. United Engineers* (1986), Ind.App., 500 N.E.2d 1265.

In *Perry*, a contractor's employee was seriously injured when he fell from an elevated fan housing where he had been sent to work without scaffolding or other safety equipment. Although the defendant-property-owner did not contractually undertake the duty of job site safety, this court held that by its actions it nevertheless may have assumed such a duty. In reversing the entry of summary judgment in favor of the defendant, this court concluded that the fact that the property owner held regular safety meetings for employees of subcontractors and employed safety men with jurisdiction of the safety program on the job site, presented sufficient evidence to allow the question of assumption of a duty to go to the jury.

In *Plan–Tec*, an employee of a subcontractor was injured when scaffolding upon which he was working to modify the exterior skin of a building collapsed and fell to the ground. *Plan–Tec*, the construction manager of the project, had not contractually agreed to provide on the job safety. This court, however, found that several facts presented sufficient evidence to create a factual issue to the jury as to the assumption of that duty. Specifically, *Plan–Tec* had appointed a safety director for the job site, held weekly safety meetings, issued directives instructing contractors to observe certain safety precautions on the job site, and inspected the scaffolding each morning before contractors were permitted to work on the project.

In *Phillips*, the decedent was fatally injured when he fell 119 feet from an unfinished catwalk where he had been installing sheet metal siding. The defendant-construction engineer of the project appointed a "safety coordinator" for the job site who conducted bi-weekly safety meetings for superintendents of contractors. The safety coordinator also conducted tours of the job site during which he noted safety violations and unsafe practices and after which he advised the violator by letter to remedy the problem. The *Phillips* court determined that this evidence was sufficient to present to a jury the question of whether the defendant had assumed a duty regarding the safety aspects of the project.

In each of the above cases, the entity sought to be charged with the assumption of a duty appointed safety inspectors, held regular safety meetings, inspected the job site on a daily basis, and directed that certain safety precautions be taken on the job site. These factors reveal a deliberate attempt to control or actively supervise safety at the job site. In the case at bar, however, the evidence in the record shows that the Kinnicks did not appoint a safety director to supervise the job site, did not hold safety meetings, and did not prescribe any safety precautions to be taken on the project or provide written safety rules to persons at the site. Further, the Kinnicks did not conduct daily inspections of the project in general or of the roof in particular or advise any of the workers at the site about what safety equipment to utilize. In fact, many independent contractors brought their own safety equipment to the job. There was insufficient evidence as a matter of law to create a factual question for a jury as to whether the Kinnicks assumed a duty toward Robinson.

This holding is consistent with our decision in *Teitge v. Remy Construction Co., Inc.* (1988), Ind.App., 526 N.E.2d 1008. In that case, Teitge was injured when he fell from the roof of a building through an unguarded skylight to a concrete floor below. In affirming the trial court's entry of judgment on the evidence in favor of an architect on the project, this court held there was insufficient evidence to present a question to the jury as to whether he assumed a duty toward Teitge. As in our case, the architect had not appointed a safety director or conducted safety inspec-

tions on a regular basis. Further, the project administrator informed each contractor that it was responsible for the safety of its own employees.

Robinson points out, however, that the Kinnicks provided certain safety equipment to the independent contractors and had nailed two by four inch toeboards to the top of the roof where Robinson was working when he fell. These factors do not miraculously create a genuine issue of material fact. It is true that various safety equipment was present at the job site. The Kinnicks, however, did not require that the independent contractors utilize the equipment but rather merely made it available for their use if they so chose. The Kinnicks did not maintain written rules requiring the safety equipment be used or conduct safety meetings advocating the use of the equipment. There is absolutely no evidence from which a reasonable juror could conclude that based upon this conduct the Kinnicks assumed a duty to provide Robinson with a safe place to work. With respect to the toeboards nailed on the roof, in the absence of any other evidence indicating the contrary, one or two instances of safety precautions taken by the defendant does not raise a jury question as to whether a duty was assumed. *Teitge, supra.* The trial court properly entered summary judgment in favor of the Kinnicks on this basis.

Additionally, IND.CODE 22–1–1–10 provides:

> Every employer and place of employment under the jurisdiction of the department of labor created by this chapter shall:
>
> (1) furnish employment that is safe for the employees therein;
>
> (2) furnish and use safety devices, safeguards, methods and processes reasonably adequate to render employment and place of employment safe; and
>
> (3) do every other thing reasonably necessary to protect the safety of the employee.

In the alternative, Robinson contends the Kinnicks violated the duty to provide a safe work place allegedly imposed upon them under this statute. In support of his position, Robinson cites *Maynard v. Flanagin Brothers, Inc.* (1985), Ind.App., 484 N.E.2d 71, *reh. denied* 490 N.E.2d 1147, *trans. denied.*

In *Maynard,* an employee of an independent contractor was injured when a trench he had been excavating for sewer lines collapsed, burying him. The plaintiff sued the prime contractor, independent contractor, and subcontractor on the project to recover for the injuries he sustained in the accident. Summary judgment was granted in favor of the prime contractor based upon the general rule that a prime contractor is not liable for injuries to servants of an independent contractor. On appeal, Maynard argued that as an exception to the general rule, a prime contractor was charged with the duty to provide for his safety by virtue of the construction industry regulations promulgated by the Indiana Department of Labor pursuant to IND. CODE 22–1–1–11. In reversing the entry of summary judgment, the Third District of this court held that the term "place of employment" in IND.CODE 22–1–1–11 imposed upon prime contractors a duty to insure compliance with the construction industry safety regulations for the protection of all workers on a job site including those beyond the basic employer-employee relationship.

■ Robinson seeks to extend this reasoning to IND.CODE 22–1–1–10 and argues that the duty to provide a safe work place imposed by that statute applies to the Kinnicks as they provided a "place of employment." The Kinnicks argue that the *Maynard* rationale is not applicable to IND.CODE 22–1–1–10 and thus the statute only imposes a duty with respect to the basic employer-employee relationship.

We need not decide whether the *Maynard* rationale can serve a basis upon which to extend the protection of IND. CODE 22–1–1–10 to independent contractors. Even if that statute applied beyond the area of employers and employees, Robinson has failed to establish that it imposed a duty upon the Kinnicks. The holding in *Maynard* was expressly limited to prime

contractors. Robinson, however, has wholly failed to show how the Kinnicks could be considered prime contractors. In the present case, the Kinnicks were the property owners/contractees and not prime contractors. Robinson conceded he was an independent contractor and was not an employee of the Kinnicks. Thus, the Kinnicks were not charged with a specific duty to provide a safe work place for Robinson under IND.CODE 22–1–1–10.

Accordingly, the trial court's entry of summary judgment in favor of the Kinnicks is affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.