**T.S.B. by her Guardian Ad Litem, Tim J. DANT, Plaintiff–Appellant,**

v.

**David R. CLINARD and South–Central Christian Children's Home, Inc., Defendants–Appellees.**

**No. 10A01–8912–CV–525.**

Court of Appeals of Indiana,
First District.

May 17, 1990.

Bruce A. Smith, Washington, for plaintiff-appellant.

David A. Lewis, Jeffersonville, for defendants-appellees.

BAKER, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, T.S.B., by her guardian ad litem, Tim J. Dant (hereinafter re-

ferred to as T.S.B.), appeals the trial court's grant of summary judgment in favor of defendant-appellees, David R. Clinard (Clinard) and South–Central Christian Children's Home, Inc. (South–Central).

We affirm.

### STATEMENT OF THE FACTS

T.S.B. was born on June 3, 1977, to Clayton and Gwen Beckett. Approximately three years later, T.S.B. began living with Clayton's parents, Alpha and Marilyn Sue Beckett (the Becketts). Marilyn Beckett (Mrs. Beckett) was subsequently appointed T.S.B.'s guardian by the Daviess Circuit Court.

In May of 1983, Mrs. Beckett contacted Clinard who was the Director of Professional Services at South Central, a privately owned child adoption agency. Mrs. Beckett told Clinard of her desire to have nearly six-year-old T.S.B. placed for adoption. On June 2, 1983, Clinard met with T.S.B. and her grandparents for an initial interview.

In July of 1983, South–Central arranged a visit between T.S.B. and a prospective adoptive family. After a few hours, the family determined they were incompatible with T.S.B. and declined to pursue the adoption. Mrs. Beckett subsequently approached Clinard to inquire about additional families who might be willing to adopt T.S.B. Although Clinard did not know of any eligible families, he reluctantly gave Mrs. Beckett the name of Sandra and David Evans (the Evanses).

The Evanses had previously approached South–Central and expressed their desire to adopt two female children ages two through eight. After the Evanses were approved as an adoptive family, however, their name was dropped from the waiting list when it was discovered that their religious beliefs conflicted with those followed by South–Central. Clinard told Mrs. Beckett that South–Central was unable to place a child in the Evanses' home, and therefore, any adoption proceedings would have to be arranged directly between the Becketts and the Evanses.

On July 17, 1983, the Evanses visited the Beckett's home and took T.S.B. to live with them and their three sons. This transfer of custody was a private arrangement between the Becketts and the Evanses. Neither party filed a petition to terminate parental rights or a petition of adoption. Neither party revealed T.S.B.'s placement in the Evanses' home to a welfare department or to an adoption agency. Clinard, however, was aware that T.S.B. had begun residing in the Evanses' home.

On March 21, 1984, Mr. Evans beat T.S.B. with a board as a disciplinary measure. As a result of this beating, school officials notified the department of welfare who removed T.S.B. from the Evanses' home. T.S.B. was treated for her injuries resulting from the beating and returned to the care and custody of her grandmother. Mr. Evans subsequently pled guilty to battery, a Class A misdemeanor.

T.S.B. was awarded $41,000 in damages resulting from a civil action brought against the Evanses. T.S.B.'s guardian ad litem brought the present action against South–Central and Clinard, alleging that their negligent and unreasonable acts in placing T.S.B. for adoption caused her to suffer physical and emotional abuse while living at the Evanses' home.

The trial court, after entering findings of fact and conclusions of law, granted Clinard and South–Central's motion for summary judgment. The trial court found that Clinard and South–Central were entitled to judgment as a matter of law because: (1) South–Central and Clinard owed no duty to T.S.B.; (2) South–Central and Clinard's actions and/or omissions were not the proximate cause of T.S.B.'s injuries; and (3) Mr. Evans' physical abuse of T.S.B. was a superseding cause which cut off any alleged negligence and/or liability on the part of South–Central and Clinard.

T.S.B. and her guardian ad litem appeal the trial court's judgment.

### DISCUSSION AND DECISION

Today we must decide whether South–Central owed a duty to T.S.B. to refrain from providing her grandmother with a

**1255**

name of a potential adoptive family.[1] We recognize that our analysis is based on the premise that summary judgment is rarely appropriate in negligence actions. *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258, *trans. denied.*

Disposition of a case by summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show that no genuine issues of material fact exist and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing the propriety of a summary judgment, we apply the same standard as the trial court. *Sprowl v. Eddy* (1989), Ind.App., 547 N.E.2d 865. We resolve any doubt against the proponent of the motion, taking all facts properly asserted by the party opposing the motion as true. *Ogden Estate v. Decatur County Hosp.* (1987), Ind.App., 509 N.E.2d 901, 902, *trans. denied.* The proponent has the burden of establishing the motion's propriety. *Sprowl, supra.* We will reverse only if the record discloses an unresolved issue of fact or an incorrect application of the law to undisputed facts. *Robinson v. Kinnick* (1989), Ind.App., 548 N.E.2d 1167. The specific findings and conclusions of the trial court will be affirmed unless clearly erroneous. *Beneficial Mortgage Co. of Indiana v. Powers* (1990), Ind.App., 550 N.E.2d 793.

To be successful in a negligence action, a plaintiff must establish three elements: (1) the defendant had a duty to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) the defendant breached his duty; and (3) the plaintiff was injured as a result of the defendant's breach. *Webb v. Jarvis* (1990), Ind.App., 553 N.E.2d 151; *Hatton v. Fraternal Order of Eagles Aerie No. 4097* (1990), Ind.App., 551 N.E.2d 479. A plaintiff cannot recover on a theory of negligence unless it is first established that a duty existed on the part of the defendant in relation to the plaintiff. *Robinson, supra.* Whether a duty exists is a question of law for the court. *Id.* If no duty exists, then there is no actionable negligence for a breach of the purported duty. *Id.*

T.S.B. argues that Clinard and South–Central owed her a duty to use reasonable care in locating a home for her adoptive placement. T.S.B. maintains that this duty arises from either the common law, statute or regulation, or because South–Central and Clinard assumed the duty either gratuitously, voluntarily, or by agreement.

In support of her position, T.S.B. cites several cases where county and state welfare departments were held to a duty of care for the children over whom the departments had assumed custody. *Elton v. County of Orange* (1970), 3 Cal.App.3d 1053, 84 Cal.Rptr. 27; *Vonner v. Louisiana Dep't of Pub. Welfare* (1973), 273 So.2d 252; *Koepf v. County of York* (1977), 198 Neb. 67, 251 N.W.2d 866; *Bartels v. County of Westchester* (1980), 76 A.D.2d 517, 429 N.Y.S.2d 906; *Little v. Utah State Div. of Family Serv.* (1983), 667 P.2d 49. Each of these cases involved a political subdivision which obtained custody of a child and placed the child in foster care resulting in injury and in most of the cases, death to the child. These cases do not guide us in our decision, however, because the present case involves a private adoption agency which did not obtain custody of T.S.B. and which did not place her in the Evanses' home. Rather, the issues presented in this case are capable of resolution through an analysis of Indiana law regarding the existence of a legal duty.[2]

---

1. T.S.B. frames the issue in terms of whether South–Central owed her a duty of reasonable care in her placement for adoption. Because we determine that South–Central and Clinard's actions were not connected with T.S.B.'s placement for adoption, we need not determine what duty, if any, arises from an adoption agency's agreement to place a child for adoption.

2. Our research has also revealed recent cases from three states where the courts recognized adoptive parents' claims against adoption agencies in suits alleging fraud and misrepresentation by the agencies. *Michael J. v. Los Angeles County Dep't of Adoptions* (1988), 201 Cal. App.3d 859, 247 Cal.Rptr. 504; *Burr v. Board of County Comm'rs of Stark County* (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101; *Meracle v. Children's Serv. Soc'y of Wisconsin* (1989), 149 Wis.2d 19,

In determining whether a legal duty arises, consideration must be given to the nature of the relationship between people and whether the party being charged with negligence had knowledge of the situation or circumstances surrounding that relationship. *Lawson v. Howmet Aluminum Corp.* (1983), Ind.App., 449 N.E.2d 1172. Applying these principles to the present case, there is no duty on the part of a child adoption agency to a child when the agency is not engaged in placing the child for adoption.[3]

The relationship between South–Central, Clinard and T.S.B. was initiated when Mrs. Beckett contacted Clinard concerning T.S.B.'s adoption. When the first attempt at placement proved unsuccessful, Mrs. Beckett requested the names of additional families. In giving Mrs. Beckett the Evanses' name, Clinard explained that South–Central was unable to participate in the placement and any adoption would have to be arranged privately between the Becketts and the Evanses. Clinard did not know, and had no reason to know, that the Becketts would merely turn T.S.B. over to the Evanses without benefit of consultation with legal counsel, the welfare department, or another adoption agency. South–Central and Clinard's failure to participate in this placement prevented the creation of any legal duty on their part. The trial court properly granted summary judgment in their favor.[4]

Judgment affirmed.

RATLIFF, C.J., and MILLER, J., concur.

---

437 N.W.2d 532. Like the cases cited by appellant, these cases do not guide us in our decision. The harm in these cases was levied against the adoptive parents as a result of the alleged wrongful adoption performed by the adoption agencies. In the present case, no adoption was attempted or completed. Further, T.S.B.'s placement in the Evanses' home was not effected by Clinard or South–Central. We have found no cases which impose a duty on an adoption agency when it is not involved in a child's adoption or placement with a family.

3. This does not necessarily mean that a child adoption agency has a duty to a child when it is engaged in her adoption placement. That question is not presented by the facts of this case and this opinion does not attempt to answer it.

4. T.S.B. also argues that the duty she claims was owed her was breached when Clinard gave Mrs. Beckett the Evanses' name upon Mrs. Beckett's request. She further maintains that Clinard's actions resulted in her placement in the Evanses' home which eventually led to her injuries. We need not address the issues of breach and proximate cause, however, because South–Central and Clinard did not owe a duty to T.S.B. Absent a duty, there is no actionable negligence. *Robinson, supra.*