**Rosalee BATEMAN and Merrill Bateman, Plaintiffs,**

v.

**CENTRAL FOUNDRY DIVISION, GENERAL MOTORS CORPORATION, Defendant.**

**No. NA 90–30–C.**

United States District Court, S.D. Indiana, New Albany Division.

March 9, 1992.

Bruce A. Smith, Washington, IN, David V. Scott, New Albany, IN, for plaintiffs.

Wendell R. Tucker, Byron K. Mason, Mary Jo Hunter Wedding, Richard L. Norris, Norris, Choplin & Johnson, Indianapolis, IN, for defendant.

## MEMORANDUM ENTRY

NOLAND, District Judge.

### I. *Factual Background*

Central Foundry Division, General Motors Corporation (hereinafter "defendant"), is an industrial facility in Lawrence County, Indiana. *Complaint,* ¶ 2; *Answer,* ¶ 2. On April 15, 1988, the defendant hired Jungclaus–Campbell Company, Inc. (hereinafter "Company") to provide all labor, equipment, material, tools, and services for the installation of a two million dollar ($2,000,-000.00) die cast research and development center at the defendant's facility. *Complaint,* ¶ 3, *Exh. A, Contract, Art. I; Rombalski Dep.,* pp. 12–13. Pursuant to their contract, by May, 1988, the Company had constructed twenty-three (23) pier holes, approximately ten (10) feet deep. *Wilkerson Dep.,* pp. 21, 59–60; *cf., Rombalski Dep.,* p. 42. All pier holes were kept covered, except a few that the Company employees would work in during the day. *Rombalski Dep.,* p. 47–48.

Rosalee Bateman (hereinafter "plaintiff") was employed by the Company as a construction laborer. *Complaint,* ¶ 4; *Plaintiffs' Contentions,* ¶ 3. She and other Company employees had been working on the pier holes for approximately one (1) week, pouring concrete, drilling holes, excavating, and backfilling. *Wilkerson Dep.,* pp. 17–18, 60, 62, 68. On May 31, 1988, the plaintiff fell

while climbing into a pier hole. *Complaint,* ¶ 5. She sustained a herniated disk, injured her head, neck and back, has suffered pain and loss of earnings, and is permanently impaired, which will require future medical treatment. *Complaint,* ¶ 7; *Bateman Dep.,* pp. 40–41. Damages are unspecified. The plaintiff had neither been instructed to use nor provided with a ladder to climb down into or out of the pier holes. *Bateman Dep.,* pp. 34–39. Instead, she used an inch wide metal bracing on the walls of the pier holes as a ladder. *Bateman Dep.,* p. 29–30, 34–35, 41–42, 49–52. The plaintiff's husband, Merrill Bateman, seeks compensation for the loss of his wife's services and companionship. *Complaint,* ¶ 8.

## II. *Jurisdiction*

The Court has jurisdiction over citizens of different states, where the matter in controversy exceeds $50,000. 28 U.S.C. § 1332(a)(1). Under the factual background of the present case, the plaintiffs are citizens of the State of Indiana. The defendant is an unincorporated division of a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Michigan. *Answer,* p. 1, ¶ 2; *Defendant's Allegation of Diversity,* p. 2. The plaintiffs seek compensation for head and neck injuries, pain and suffering, loss of earnings, and future medical treatment. *Complaint,* ¶ 7; *Plaintiffs' Contentions,* ¶ 5. Thus, the amount in controversy is above fifty thousand dollars ($50,000.00), exclusive of interest and costs. The Court finds that it has jurisdiction to entertain and resolve the present case.

## III. *Standard of Review*

The present case is now before the Court on the defendant's Motion for Summary Judgment. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part that summary judgment shall be granted forthwith if the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). Under this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The purposes of Rule 56 are to "prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised." 10 Wright, Miller & Kane, *Fed.Civ.Prac. and Proc., Civil,* § 2712, pp. 564–67 (1983).

In determining whether a genuine issue of material fact exists, the district Court must view the record and all *reasonable* inferences drawn therefrom in the light most favorable to the nonmoving party. *Spring v. Sheboygan Area School District,* 865 F.2d 883, 886 (7th Cir.1989). At the summary judgment stage, the trial Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989) (*quoting Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511). Summary judgment may be granted if the evidence favoring the nonmoving party "is merely colorable or is not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citation omitted).

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Anderson,* 477 U.S. at 256–257, 106 S.Ct. at 2514.

Thus, the summary judgment inquiry addresses "whether the evidence presents sufficient disagreement to require sub-

mission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. If the case requires weighing the credibility of witnesses or the material facts in question, summary judgment is not appropriate. *United Association of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1265–66 (7th Cir.1990). In making this inquiry, the trial Court "should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues when there are none." *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir.1987), *cert. den. sub nom,* 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988) (*quoting Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir.1972)). The plaintiff is responsible for building and supporting a record adequate to meet the challenge of defendant's summary judgment motion; otherwise, the burdens of a trial are not justified. *Landscapers,* 916 F.2d at 1268.

## IV. *Choice-of-Law*

■■ A Federal District Court exercising diversity jurisdiction must apply the substantive law of the State in which it sits, to determine the sufficiency of the claim for relief and whether a material factual dispute exists. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see* 10 Wright, Miller & Kane, *Fed.Civ.Prac. and Proc., Civil,* § 2712, p. 592 (1983). The Court must also follow the choice-of-law rules of the forum State to determine which State's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, this Court must apply the choice-of-law rules of the State of Indiana. In contract cases, Indiana applies the law of the State with the most significant contacts to the relevant facts of the case. *W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417, 423 (1945); *Hubbard Mfg. Co. Inc. v. Greeson,* 515 N.E.2d 1071, 1073 (Ind.1987). In negligence cases, Indiana considers the place where the injury occurred, where the conduct causing the injury occurred, where the parties conduct business, and where the relationship is centered. *Hubbard Manufacturing Co., Inc. v. Greeson,* 515 N.E.2d 1071,

1073–74 (Ind.1987). In the present case, all contacts and considerations direct the Court to Indiana. It is the place where the parties negotiated and signed employment contracts, where the injuries were sustained, and where the parties are present or engage in business. Whether the plaintiffs' claims sound in contract or tort, the Court must apply the substantive law of the State of Indiana.

## V. *Discussion*

### A. Independent Contractor Liability

[8, 9] Generally, one is not liable for the acts of another unless the relation of master servant exists between them. *Allison v. Huber, Hunt and Nichols, Inc.,* 173 Ind.App. 41, 362 N.E.2d 193 (1977). For example, where a landowner employs a person, and retains a sufficient right to control the work, the relationship of master servant arises. The master is vicariously liable for the servant's negligence under the doctrine of respondeat superior. *Smith v. P & B Corporation,* 179 Ind.App. 693, 386 N.E.2d 1232, 1235 (1979), *citing Hale v. Peabody Coal Co.,* 168 Ind. App. 336, 343 N.E.2d 316, 320 (1976). " 'Control' is the essence of the *respondeat superior* doctrine;" *Smith,* 386 N.E.2d at 1238; most notably, whether the landowner can select the employee to perform the job. *Id.,* 386 N.E.2d at 1238–39.

■ In contrast to master servant, a person employing a party that performs independently will not be vicariously liable. "The general rule in Indiana is that an owner is not liable for the torts of one he hires to perform his construction as an independent contractor," *Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 363 N.E.2d 1266, 1277 (1977), or of the contractor's employees. *Jones v. Indianapolis Power & Light Co.,* 158 Ind.App. 676, 304 N.E.2d 337, 342 (1973).

It is well settled that where one lets a contract to another to do a particular work, reserving to himself no control over such work except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom the contract is let. An independent contractor is one ex-

ercising an independent employment under a contract to do certain work by his own methods, without subjection to the control of his employer except as to the product or result of the work. When the person employing may prescribe what shall be done, or who is to do it, the person so employed is a contractor and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer, does not render the person contracted with to do the work a servant.... The difference between an independent contractor and a mere servant is not to be determined solely by the retention of a certain kind or degree of supervision by the employer. It is to be determined by the contract as a whole—by its spirit and essence—and not by the phraseology of the single sentence or paragraph.

*Prest–O–Lite Company v. Skeel*, 182 Ind. 593, 106 N.E. 365, 367 (1914). "The control must be such as would enable the landowner to oversee the method of work employed. It must be a control which would under the common-law have given rise to the doctrine of respondeat superior." *Cummings*, 363 N.E.2d at 1272.

■ In the present case, the issue is whether the Company or its employees were under the power and control of the defendant and subject to its orders and directions when the plaintiff climbed down into the pier hole. *Jones*, 304 N.E.2d at 343; *Marion Shoe Company v. Eppley*, 181 Ind. 219, 104 N.E. 65 (1914). Patrick Rombalski was the defendant's only employee directly involved in the construction project. *Rombalski Dep.*, p. 28. He neither directed the Company's employees in carrying out their duties, nor issued instructions to the Company, its employees, or other subcontractors. *Wilkerson Dep.*, pp. 32, 34; *Bateman Dep.*, pp. 64–65. David Wilkerson was the Company's job superintendent. He coordinated their work with other contractors and supervised the Company's employees. *Wilkerson Dep.*, pp. 5–6, 16. He was the plaintiff's supervisor. *Wilkerson Dep.*, pp. 18–19. When the Company's employees had problems or questions, they asked Wilkerson for assistance and direction. *Wilkerson Dep.*, pp. 19–20. The Company

directed, and the defendant had no control over, the means, methods, and technique of the construction at the job site. *Wilkerson Dep.*, p. 20. The Company provided the plaintiff with daily work assignments, and provided all of the equipment necessary for its employees to conduct their work. *Bateman Dep.*, pp. 32–34, 64; *Wilkerson Dep.*, pp. 32–34, 57; *Rombalski Dep.*, p. 51. Thus, the Court finds that neither the Company nor its employees were under the control of the defendant, nor subject to its orders and directions when the plaintiff climbed into the pier hole. The Company and the plaintiff were the defendant's independent contractors, not servants.

## B. Landowner Liability

The Court has ruled that a landowner who employs a contractor to perform particular work, and retains no control, except the right to require a particular standard of completed work, is not liable for the negligence of the contractor or its employees. The general rule is not absolute. It has been modified by many exceptions, where liability cannot be delegated to an independent contractor. *Scott Construction Co. v. Cobb*, 86 Ind.App. 699, 159 N.E. 763, 765 (1928).

### i. *Intrinsically Dangerous Work*

■ A landowner is liable where the employed act involves intrinsically dangerous work. This exception applies where the contract itself explicitly requires the performance of intrinsically dangerous work, foreseeable to the parties at the time of contracting. *Jones*, 304 N.E.2d at 344. "It cannot be used to describe circumstances and conditions which are natural, ever-present components of the instrumentality itself, but are merely dangers arising from casual or collateral interference of others." *Id.* Indiana Courts are in agreement that an instrumentality is not intrinsically dangerous if the "risk or injury involved in its use can be eliminated or significantly reduced by taking proper precautions." *Hale*, 343 N.E.2d at 322; *Cummings*, 363 N.E.2d at 1275.

■ In the present case, climbing into the pier hole could have been made safe by

using a ladder. *Wilkerson Dep.*, p. 30. The plaintiffs have implied in their negligence count that the absence of a ladder caused the plaintiffs' injury. *Plaintiffs' Response to Defendant's Motion for Summary Judgment*, pp. 6, 8. There is no evidence that the parties could have foreseen that the plaintiffs' injuries would have occurred if precautionary measures, such as a ladder, were taken. Therefore, the Court finds that climbing into the pier hole was not intrinsically dangerous.[1]

■ The landowner's liability under this exception is premised on his superior knowledge of the hazardous land or instrumentality. *McClure v. Strother*, 570 N.E.2d 1319, 1322 (Ind.App.1991). Indeed, Rombalski (the defendant's engineer) had extensive experience in constructing pier holes. *Rombalski Dep.*, pp. 4–10, 48–50, 58–59. Unlike Rombalski, Wilkerson (the Company's job superintendent) had no experience in constructing pier holes beneath the ground. *Wilkerson Dep.*, p. 88. Such "superior knowledge" of a landowner temporarily caused confusion in Indiana Courts and is the basis of an argument by the plaintiff. *Plaintiffs' Response to Defendant's Motion for Summary Judgment*, pp. 7–8. However, "a landowner's superior knowledge of a potential danger in the operation of an independent contractor's dangerous instrumentality is not an independent basis of landowner liability for injuries to an independent contractor's employee caused by the use of the instrumentality." *McClure*, 570 N.E.2d at 1323. Therefore, the Court finds that the defendant's superior knowledge of pier hole construction does not give rise to an independent cause of action.

### ii. *Specific Duty by Law or Contract*

■ A landowner is liable where he is charged with a specific duty by law or con-

tract. This exception applies where a landowner breaches its duty of care to business invitees, gratuitously or voluntarily assumes a duty, or is contractually obligated to perform a duty. In *Robinson v. Kinnick*, 548 N.E.2d 1167 (Ind.App.1989), an independent contractor (Robinson) was hired in the winter to roof the landowner's (Kinnick's) house. While carrying a bundle of shingles across the roof, Robinson slipped on an accumulation of ice and fell to the ground. The Court applied the general rule that landowners are not under a duty to provide independent contractors with a safe place to work. *Id.*, at 1170. *Accord Teitge v. Remy Construction Co., Inc.*, 526 N.E.2d 1008, 1010 (Ind.App. 1988) (an employee fell through a skylight on a school's roof while walking backward and dragging metal to a salvage area). The general rule is distinguishable from the maxim that a landowner has a common law duty to keep his property in a reasonably safe condition for business invitees, including employees of independent contractors. *Howard v. H.J. Ricks Construction Co., Inc.*, 509 N.E.2d 201, 205 (Ind.App.1987). Thus, a landowner has no duty to furnish an independent contractor's employees with a safe place to work; rather, he has a duty "to keep his property in a reasonably safe condition, coextensive with the purpose and intent of the implied invitation." *Id.; Brizius*, 199 N.E.2d at 487–88. The duty "depends on the circumstances surrounding the invitation, including the character of the premises the invitee is invited to use, the nature of the invitation, the conditions under which it is extended, and the use of the premises to be made by the invitee." *Brizius*, 199 N.E.2d at 487–88.

■ In *Howard*, the independent contractor's employees were invited to come

---

1. Indiana Courts are not in agreement in whether the intrinsically dangerous exception applies to employees of an independent contractor. A landowner has been held liable for injuries caused by hazardous instrumentalities maintained on his premises. *Jones v. Indianapolis Power & Light Co.*, 158 Ind.App. 676, 304 N.E.2d 337, 344 (1973). It has followed that a landowner who assumes control of a dangerous instrumentality otherwise under the control of an independent contractor or a third party is liable for injuries to the independent contractor's employee caused by the operation of the instrumentality. *McClure v. Strother*, 570 N.E.2d 1319, 1322 (Ind. App.1991); *Plan–Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind.App.1983). However, an Indiana Court has gone so far as to hold that the inherently dangerous work exception does not apply to independent contractor employees. *Johns v. New York Blower Company*, 442 N.E.2d 382, 386 (Ind.App.1982).

upon the landowner's property to repair a roof. An employee was killed when he contacted low hanging electric lines. The Court held that the landowner had a duty to maintain his building, roof and supporting structure in a reasonably safe condition. However, the landowner had no duty where he had no control over the instrumentality that caused the injury. *Howard*, 509 N.E.2d at 205. In *Hale*, 343 N.E.2d 316, the landowner contracted for the construction of a coal handling facility. The employee was fastening metal screws on a conveyor belt housing when he fell from a scaffold. The scaffold was owned, erected, and maintained solely by the contractor, for the exclusive use of its employees. The Court held that the injuries were not caused by a condition of, or by any instrumentalities maintained on, the landowner's premises. "The duty does not extend or relate to instrumentalities within the sole control of the independent contractor for the exclusive use of the contractor's employees." *Hale*, 343 N.E.2d at 325. Thus, Indiana landowners do not have a duty to provide independent contractors with "ladders, scaffolding, supports, or platforms for his support or which he should utilize or stand upon in the doing of his work." *Hoosier Cardinal Corporation v. Brizius*, 136 Ind.App. 363, 199 N.E.2d 481, 486 (1964).

A landowner's duty is to exercise care to keep his property in a reasonably safe condition, not to provide a safe place for business invitees to work, including employees of independent contractors. The basis of the landowner's liability in the former sense is predicated upon his superior knowledge of the dangers on the premises. Thus, landowners do not owe an invitee a duty to warn of patent dangers. Where latent defects are discovered, or should have been discovered, landowners are required to warn invitees, including independent contractors, or correct the dangerous condition. *Louisville Cement Co. v. Mumaw*, 448 N.E.2d 1219 (Ind.App. 1983). If the landowner has no actual or constructive knowledge of any danger, superior to that of the invitee, there is no duty to warn of the danger. *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51, 54–55 (Ind. 1985); *accord Douglass v. Irvin*, 549 N.E.2d 368, 371 (Ind.1990).

In the present case, the pier hole was within the sole control of the Company for the exclusive use of its employees. No latent defect or negligent property maintenance was involved. The defendant's duty was to maintain the supporting structure under the pier hole in a reasonably safe condition, not to warn the plaintiff of patent dangers. The Court finds that the defendant did not have a duty to provide the plaintiff, as a business invitee, with a ladder to climb into the pier hole constructed by the Company.

A person may also gratuitously or voluntarily assume a duty. *Perry v. Northern Indiana Public Service Co.*, 433 N.E.2d 44, 49–50 (Ind.App.1982). Landowners that gratuitously or voluntarily assume a duty to provide a safe place to work may become liable to independent contractors. It creates a special relationship between the parties and a duty to thereafter act as a reasonably prudent person. *Robinson v. Kinnick*, 548 N.E.2d 1167, 1168–69 (Ind.App. 1989). This applies where the landowner takes affirmative steps to provide for on the job safety. *Id.*; *McClure v. Strother*, 570 N.E.2d 1319, 1321 (Ind.App.1991). The reasoning is that the landowner undertook certain safety-related duties and then failed to perform them properly. *Plan–Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1221 (Ind.App. 1983). In the following cases, the Courts have held that it was for the trier of fact to determine whether the landowner assumed the duty, and the extent of that duty, to provide a safe workplace.

In *McClure*, the landowner (Strother) hired an independent contractor (McClure) to paint the exterior trim and install gutter screens on the Strother's home. This required the use of a ladder. In response to a question from McClure, Strother stated the ground was firm enough to support the ladder and McClure's weight. Soon after Strother refused McClure's request to tie the ladder to the gutter, McClure fell. *Id.*, 570 N.E.2d at 1320–21. The Court held that there existed a triable issue concerning whether Strother assumed control of the ladder. *Id.*, 570 N.E.2d at 1323. In *Perry*, a contractor's employee was injured by falling

from a fan housing where he was working without scaffolding or other safety equipment. The landowner had no contractual duty to provide a safe place to work; however, the landowner had held regular safety meetings of sub-contractors, and employed from six (6) to thirty (30) safety inspectors with jurisdiction over job safety. *Id.,* 433 N.E.2d at 49.

In *Plan–Tec,* a subcontractor's employee was injured when a supportive scaffolding collapsed while he was changing expansion joints on the exterior skin of a hospital building. The construction manager had no contractual duty to provide a safe place to work; however, the landowner had appointed a safety director, held weekly safety meetings, issued directives to contractors to observe certain job site safety precautions, and inspected the scaffolding daily, before the workers were permitted to work. *Id.,* 443 N.E.2d at 1220. In *Phillips v. United Engineers & Constructors, Inc.,* 500 N.E.2d 1265 (Ind.App.1986), the decedent fell from an unfinished catwalk from where he was installing sheet metal siding. The landowner had employed a construction manager, who in turn employed a "safety coordinator" that conducted bi-weekly safety meetings, regularly toured the job site, and advised employees, in writing, to remedy safety violations .and unsafe practices. He admitted that a portion of his responsibilities was to "govern the safety of contractors." *Id.,* at 1269.

These cases teach that a landowner risks assuming a duty of safety to its independent contractor's employees where the landowner appoints safety inspectors, advises or directs employees at the job site concerning safety, holds regular safety meetings, inspects the job site on a regular basis, provides safety equipment, or prescribes safety precautions, such as written rules. In the following cases, the courts have held, as a matter of law, that a landowner did not assume a duty to provide a safe workplace.

In *Teitge,* the landowner had employed a project administrator (not a "safety director" or "coordinator") to complete the paperwork associated with the construction project. He held bi-weekly on-site progress and coordination meetings. At each meeting the adminis-

trator reiterated that contractors were responsible for the safety of their own employees. The administrator conducted daily onsite inspections, coordinated work among the contractors, and monitored compliance with their contractual agreements. No safety inspections were conducted on a regular basis; however, he did make isolated requests of employees, including the retrieval of paper backing from an excavated hole where a pipe was being repaired, that an employee use safety glasses while hammering a hole in concrete, and that an employee stand on the back side of a wall to prevent pieces of brick or block from hitting passers-by. The Court agreed with the trial court that the facts were not sufficient to present a jury question on whether the landowner had assumed a duty. "We fail to see how that conduct, in and of itself, would suddenly transform Brown's role from one as on-site coordinator to one as on-site coordinator to one as on-site babysitter." *Teitge,* 526 N.E.2d at 1014–15. *Accord Robinson,* 548 N.E.2d at 1170 (one or two instances of safety precautions taken by the landowner do not raise a jury question as to whether a duty was assumed).

In *Phillips,* the landowner employed a construction manager to provide engineering services and coordinate the work of over one-hundred (100) contractors. The contract required that furnished materials and work meet the specified plans, and that contractors conform to federal, state and local safety regulations. The contract between the landowner and each contractor required them to conduct their operations safely and to observe applicable safety laws and regulations. The Court held that the landowner did not assume a duty over the safety of the contractors' employees by contractually prescribing safety rules. The Court reasoned that absent any control by the landowner over the manner or means by which the independent contractors or their employees performed, no duty was assumed. *Id.,* at 1267–68. A contract can obligate an independent contractor to comply with safety rules, without reserving the right to control job site safety. *Perry,* 433 N.E.2d at 48. Just because the contract gives the defendant the power to prescribe safety regulations does not give

rise to a specific duty to exercise or enforce that right. *Jones,* 304 N.E.2d at 346. "Without a specific duty to inspect, contract specifications requiring the observance of safety precautions impose a duty only on the independent contractor and not the owner." *Cummings,* 363 N.E.2d at 1277.

In *Walters v. Kellam & Foley,* 172 Ind. App. 207, 360 N.E.2d 199 (1977), a sheet metal worker, attempting to retrieve a dropped tool, sustained serious injuries from falling through a ventilating unit panel. The Court stated that "the obligation to assure that construction conforms to the authorized plans is to be distinguished from the obligation to assume responsibility for the safety of persons lawfully on the construction site." *Id.,* 360 N.E.2d at 207. The landowner was not required to provide supervision over the daily work and safety procedures. But the contractor was contractually required to comply with all relevant safety laws. The contractor and the architects were regularly on the job-site; however, they neither inspected the work with regard to safety procedures, nor supervised the manner of installation. Their control over the project extended to approving or rejecting equipment or materials which did not conform to the plans and specifications. The Court held that under these facts there was no duty to *correct careless or dangerous work procedures* or to inspect, reject, or warn of a piece of equipment dangerous only with regard to the method of its installation. *Id.,* 360 N.E.2d at 211.

In the present case, Wilkerson coordinated work with other contractors and supervised the Company's employees, including the plaintiff. *Wilkerson Dep.,* pp. 5–6, 16. He was responsible for the safety of employees at the job site, and carrying out the Company's safety policies. *Wilkerson Dep.,* pp. 35–38. For example, it was the Company's policy for management to hold weekly progress meetings during construction projects. *Wilkerson Dep.,* p. 25. Rombalski did attend the progress meetings, where discussions included progress, scheduling, deliveries, problems (including safety issues and violations), and general information. *Wilkerson Dep.,* pp. 81–83; *Rombalski Dep.,* pp. 55–57.

There is no evidence that Rombalski commented on the safety of the pier holes.

Wilkerson held weekly "tool box talk" meetings at the job site. *Wilkerson Dep.,* pp. 27–29, 34. Safety measures and the proper use of equipment were discussed. *Wilkerson Dep.,* p. 28. The defendant did not attend these meetings. *Wilkerson Dep.,* p. 34; *Rombalski Dep.,* p. 62. The plaintiff admits she did not attend many of these lunchtime meetings because the discussions were not "worthy of her attention." *Bateman Dep.,* pp. 45–47. Thus, it is consistent for the Court to accept the Company's statement that it provided its employees access to, and instructed them to use, ladders in the pier holes, *Wilkerson Dep.,* pp. 21, 28, although the plaintiff contends that she did not receive instructions on the use of ladders. *Bateman Dep.,* pp. 34–40.

At the job site, Rombalski spent the majority of his time working in a trailer, not in the area where construction occurred. *Wilkerson Dep.,* p. 78; *Rombalski Dep.,* p. 64. He never inspected pier holes or ladders before the Company's employees began working. *Wilkerson Dep.,* p. 31. He conducted general inspections of the job site which were, in part, to insure that the Company complied with the defendant's safety rules. *Rombalski Dep.,* p. 40. However, he never inspected the construction site solely for the purpose of looking for safety violations. *Wilkerson Dep.,* p. 78–81; *Rombalski Dep.,* p. 24–25, 39, 63–64. If Rombalski thought the Company's employees were creating an imminent safety hazard, he would have directed them to stop working or cease a particular activity; other violations would have been reported to Wilkerson for appropriate action. *Rombalski Dep.,* p. 61.

■ Although the contract obligated the Company to comply with safety rules, the defendant did not reserve the right to control job safety. The defendant had the right to prescribe safety rules; but the plaintiff has failed to evidence that the defendant exercised such rights. Considering that the undisputed material facts show that the defendant neither appointed a safety director at the job site, nor held weekly safety meetings, nor inspected the pier holes on a regular

basis, *see Wilkerson Dep.*, p. 31, the Court finds that, as a matter of law, the defendant neither gratuitously nor voluntarily assumed a duty to provide the Company nor the plaintiff with a safe place to work.[2]

A landowner may be obligated to perform a duty by contract. *Plan–Tec*, 443 N.E.2d at 1218. The Court will interpret the contract so as to ascertain the intent of the parties—at the time the contract was made, as disclosed by the expressed language of their rights and duties. All contractual provisions are examined. The meaning is not to be determined by a consideration of individual words, phrases, or isolated paragraphs. If an ambiguity exists, and the meaning of the contract involves extrinsic evidence, its construction is for the trier of fact; if only the contractual language is ambiguous, and no extrinsic evidence is necessary, the issue is a question of law for the Court. *Jones v. City of Logansport*, 436 N.E.2d 1138, 1143–44 (Ind.App.1982). *See Teitge v. Remy Construction Co., Inc.*, 526 N.E.2d 1008, 1010–11 (Ind.App.1988) (contract language interpreted not to impose upon each contractor a duty to protect all of the employees on the job site).

The pertinent provisions of the contract between the Company and the defendant provide that:

CONTRACTOR'S LIABILITY AND INDEMNIFICATION OF OWNER. The Contractor assumes all risk of damage, or injuries, including death, to any property or persons used or employed on or in connection with the work, and all risk of damage or injuries, including death, to property or persons wherever located, resulting from any action, omission or operation under the agreement or in connection with the work.

*Complaint, Exh. A, Contract, Art. XVII.* The Company is required to maintain adequate workman's compensation, public liability and property damage insurance coverage, *id., Art. XVIII,* and to abide by twelve (12) pages of the defendant's safety rules. *Id., Article XXIV; Wilkerson Dep.* pp. 47–49, 56. The opening paragraph of those rules states that "The Contractor is responsible for the action, safety, conduct and medication of his employees." *Rombalski Dep., Exh. B, Plant Engineering Safety and Fire Specifications For Outside Contractors.* The contract also provides that the Company has a duty to the defendant's employees and the public:

SAFEGUARDING THE PUBLIC. The Contractor shall provide and keep in good repair during the progress of the work, all related fences, temporary sidewalks, roofed passageways, guard lights, warnings, signs, signals, and all other safeguards necessary for the protection and convenience of the Owner's employees and public, as required by accepted safety codes.

*Complaint, Exh. A, Contract, Art. XX.* Nowhere does the contract charge the defen-

---

**2.** There are distinct policy reasons why there is a judicial reluctance to find that a landowner assumed a duty to provide an independent contractor's employees with a safe place to work.

Under modern law the employees of the contractor in the vast majority of instances are covered by Workmen's Compensation laws, and the owner does not escape liability since, in effect, he pays the premium for the Workmen's Compensation coverage as part of his contract price. Secondly, had the owner's own employee been injured performing the work, the owner's liability would be limited by the Workmen's Compensation laws. There does not appear to be any valid reason to subject the owner to greater liability for employing an independent contractor to perform the work than he would have had if he had employed his own servants.

*Johns v. New York Blower Company*, 442 N.E.2d 382, 388 (Ind.App.1982).

It seems ironic that "the right to control one's subcontractor must have sufficient practical effect that an imposition of vicarious liability will encourage a form of supervision which will promote accident prevention." *Cummings*, 363 N.E.2d at 1272. Yet the more control a landowner exerts, the more liable he may become, thus discouraging a landowner from involvement in accident prevention. The legal fiction can only be based on the assumption that an independent contractor alters its safety precautions where a landowner assumes control of safety. This is reflected in the cases, where the issue is phrased as what the landowner assumed by his actions, rather than the issue of what duties the independent contractor failed to fulfill, *because they were being assumed by the landowner*, even where the contractor was contractually bound to fulfill them.

dant with the responsibility of providing for the Company's safety.

Rombalski was the defendant's only employee directly involved in the construction project. *Rombalski Dep.*, p. 28. His role at the job site was as follows:

OWNER'S REPRESENTATIVE. The Owner's Engineer is present for the purpose of assuring the Owner that the plans and specifications are being properly complied with and while the Owner's Engineer in charge is instructed to give the Contractor all desired assistance in interpreting the plans and specifications and otherwise, such assistance is not to relieve the contractor from any responsibility for the work, and any work which proves faulty must be made right by the Contractor to the satisfaction of the Owner.

＊　　＊　　＊　　＊　　＊　　＊

It is not incumbent upon the Engineer to notify the Contractor when to begin, cease or resume work, nor to give early notice of the rejection of faulty work, nor in any way to superintend so as to relieve the Contractor of responsibility, nor of the consequence of neglect or carelessness by him or his subordinates.

*Complaint, Exh. A, Contract, Art. VI.*

■ No provision of the contract gives the defendant the right to control the manner or means by which the Company or the plaintiff completed the contract, *supra* pages 8–10. The contract between the defendant and the Company obligates the Company, not the defendant, with a specific duty to provide for the safety of the Company's employees, such as being responsible for a person who is injured while climbing into a pier hole without a ladder. *Id., Art. XVII*, ¶ 1. The Company must maintain insurance to cover just such an incident. *Id., Art. XVIII.* In fact, the contract charges the Company with a duty to safeguard the defendant's employees and the general public from such situations. *Id., Art. XX.* Therefore, the Court finds that the defendant has not been contractually charged with a duty to the plaintiff.

### iii. *Nuisance Act*

■ A landowner is liable where the employed act creates a nuisance. *Scott Construction Co. v. Cobb*, 86 Ind.App. 699, 159 N.E. 763 (1928). A landowner may generally use his land for any purpose he chooses provided he does not unduly interfere with the use and enjoyment of the property of another. *Hays v. Hartfield L–P Gas*, 159 Ind.App. 297, 306 N.E.2d 373, 376 (1974).

Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

*Ind.Code* § 34–1–52–1 (1986).

A nuisance is classified as public if it affects an entire community or neighborhood or as private if its effect is peculiar to an individual or a limited number of individuals.

*Yeager & Sullivan, Inc. v. O'Neill*, 163 Ind. App. 466, 324 N.E.2d 846, 850 (1975). The plaintiff in the present case appears to charge the defendants with maintaining a private nuisance (no effect to the general public is alleged).

Not every dangerous agency is a nuisance, and we believe it can be said generally that an instrumentality maintained upon private premises may only be said to be a nuisance upon the ground that it is calculated to produce personal injuries when it is of such character, and so maintained, that it is reasonably and naturally calculated to injure the general public or strangers who may come upon the premises.

*Town of Kirklin v. Everman*, 217 Ind. 683, 28 N.E.2d 73, 75 (1940) (a covered pit of gasoline fumes was not a private nuisance. "Only when the boards were removed and one descended into the pit and there ignited matches was the pit dangerous."); *Beresford v. Starkey*, 563 N.E.2d 116, 126 (Ind.App. 1990), *affirmed* 571 N.E.2d 1257, 1258 (Ind. 1991) (swimming area and dock were not a private nuisance, where a guest was injured after diving into shallow water). "A condition created by one landowner that causes

another reasonably to be in constant fear for the safety of his life or property is such a serious interference so as to constitute a nuisance." *Hays v. Hartfield L–P Gas,* 306 N.E.2d at 376 (propane gas tank within 300 feet of the plaintiff's home did not constitute a private nuisance); *see also Scott Construction Co. v. Cobb,* 86 Ind.App. 699, 159 N.E. 763 (1928) (blasting stone in a quarry constituted a private nuisance); *Zeppenfeld v. Franklin Motor Service Co.,* 77 Ind.App. 687, 134 N.E. 487 (1922) (gasoline tanks in a residential area, constructed in violation of fire regulations, constituted a private nuisance).

Where the contractee employs the contractor to do the work for his benefit, which, in the ordinary mode of doing it, he, as a prudent man, has a reason to believe is a nuisance, he is liable for any injuries that may result from it *to third persons.* The reason of the contractee's liability is that the contractee is liable for injuries resulting from his own unlawful act, and he cannot protect himself from such liability by employing others, under the name of independent contractors, to do the unlawful act. But where he, as a prudent man, has no reason to believe that the act contracted to be done is a nuisance, but is itself lawful, and it turns out during the progress of the work that it is necessary to create a nuisance in order to do the work, then the contractee is not liable for injuries *to third persons* resulting from the nuisance before he had notice of its existence.

But in such a case, upon receiving notice, it would be his duty to take such reasonably prompt and efficient means as are in his power to suppress the nuisance, else he will be responsible for injuries to third persons from the nuisance after notice. *Cobb,* 159 N.E. at 765 (Citation omitted; emphasis added). The nuisance exception to the general rule of landowner non-liability protects only third persons; it does not include contractor employees. The plaintiff is not in the class of persons this exception protects.[3]

#### iv. *Injury to Others*

 A landowner is liable where the employed act will probably cause *injury to others,* unless due precaution is taken to avoid harm. The phrase "injury to others" does not apply to employees of independent contractors. Rather, it applies to third persons who are not involved in the work being done, and therefore, less likely to be aware of its associated dangers. *Mumaw,* 448 N.E.2d at 1222. The plaintiff is not in the class of persons this exception protects.[4]

#### v. *Illegal Act*

 A landowner is liable where the employed act is illegal. Although alleged, there is no evidence in the pleadings that the defendant hired the Company or the plaintiff to perform an illegal act. *See Complaint,* ¶ 6(e). The plaintiff has not discussed this issue in their Response to the defendant's

---

**3.** In the present case, there is no evidence that the pier holes were injurious to health, indecent, offensive, or obstructive. They were kept covered at all times, unless being worked on during the day. *Rombalski Dep.,* pp. 47–48. Neither is there any evidence that the landowner nor the Company's employees were in constant fear of the pier hole, nor that the pier hole was calculated to injure a stranger who entered the property. Only the use of the pier by the plaintiff made it injurious to her health. Therefore, in the alternative, the Court finds that the defendant neither employed the Company nor the plaintiff to perform a nuisance act.

**4.** Foreseeability is also an essential element. The nature of the work assigned to the employee which caused the injury must be foreseeable by the landowner at the time of contracting. *Denneau v. Indiana & Michigan Electric Company,* 150 Ind.App. 615, 277 N.E.2d 8, 12 (1971).

There is no indication in the record that the defendant should have foreseen, at the time of contracting, that the plaintiff would have climbed into a pier hole without a ladder.

Practically, to apply this exception for the benefit of an independent contractor's employee would obligate landowners to examine all contractor work, making certain that all precautions had been taken to prevent probable harm. This would involve the landowner in the manner and means of the contractor's performance. This is in direct conflict with the basic principles underlying the landowner-independent contractor relationship; most especially, the expectations and intentions of the parties. The exception cannot be read so broadly as to nullify the general rule of non-liability. Therefore, in the alternative, the Court finds that the defendant neither hired the Company nor the plaintiff to perform an act that would probably cause injury to others.

Motion for Summary Judgment. Therefore, the Court finds that the defendant neither hired the Company nor the plaintiff to perform an illegal act.

## VI. *Conclusion*

The plaintiff was an employee of the defendant's independent construction contractor; they were not the defendant's servants. The defendant neither controlled the Company's manner nor method of work. Their contract did not require the performance of intrinsically dangerous work. The defendant was not charged by law or contract with a specific duty. The plaintiff was not in the class of persons protected in whether the employed act created a nuisance, or would probably have caused injury to others. And the employed act was not illegal. For the foregoing reasons, the defendant is not liable for the plaintiffs' injuries, sustained while climbing into a pier hole.[5] The defendant's Motion for Summary Judgment is therefore GRANTED.

---

**5.** Because the defendant had no duty to the plaintiff, the Court does not reach the issue of whether the plaintiff was contributorily negligent or incurred the risk while climbing into the pier hole without a ladder.