Dandy E. TAYLOR II and Faye E. Townsend, Appellants–Plaintiffs,

v.

Jennifer L. DUKE and J.B. Hunt Transport, Inc., Appellees–Defendants.

No. 49A04–9811–CV–550.

Court of Appeals of Indiana.

July 6, 1999.

Gil I. Berry, Jr., Buck Berry Landau & Breunig, Indianapolis, for appellants.

Keith A. Gaston, Carol A. Nemeth, White & Raub, Indianapolis, for appellees.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Dandy Taylor II and Faye Townsend appeal the trial court's grant of summary judgment in favor of Jennifer Duke and J.B. Hunt Transport, Inc.

We affirm.

### ISSUE

Whether the trial court erred in granting summary judgment in favor of Duke and J.B. Hunt.

### FACTS

At some point during the evening of September 5, 1995, 17 year-old Dandy Taylor was walking behind the Venture Store on West Washington Street in Indianapolis on his way to the bridge under which he usually slept. He saw no one near the store and did not know whether it was open for business. When it suddenly began to rain, Taylor sought shelter under a trailer parked against the back of the store on a slanted ramp in the loading dock area. Although he was aware that trailers are often attached to tractors and removed from loading dock areas, Taylor leaned against one of the back tires and fell asleep.

At approximately midnight, Jennifer Duke, an over the road truck driver and J.B. Hunt employee, arrived at the Venture loading dock with a trailer full of Venture merchandise. At the time, J.B. Hunt had a written agreement for carrier services with Venture pursuant to which J.B. Hunt drivers delivered trailers full of merchandise to Venture and exchanged them for empty ones. Duke, who had previously made deliveries to the Venture on West Washington Street, had always arrived and departed when the store was closed. She had never seen anyone in the loading dock area.

When Duke arrived at Venture that evening, she drove her tractor-trailer to the loading dock area behind the store, unhooked the full trailer and removed it from her tractor. She then positioned her tractor to face the empty trailer that she planned to attach to her tractor and shined the tractor's headlights on the trailer to illuminate the area around it. She looked under the empty trailer for bottles, blocks and other debris. Finding nothing, she backed her tractor up to the empty trailer, connected the two vehicles, inched the tractor forward slightly to make sure that the vehicles were properly attached, and drove the tractor-trailer unit away from the loading dock to the parking lot so that she could perform a required Department of Transportation inspection of the vehicles before she left the premises. When Duke exited the tractor, she saw blood on the ground and discovered that she had run over a sleeping Taylor.

In February 1996, Taylor and his mother, Faye Townsend, (collectively "Taylor"), filed a negligence action against Venture, Duke and J.B. Hunt. In April 1997, the parties stipulated to the dismissal of Venture from the action. Duke and J.B. Hunt subsequently filed a motion for summary judgment, and the trial court held a hearing thereon. In October 1998, the trial court issued an order granting Duke and J.B. Hunt's motion which provides in pertinent part as follows:

In entering this judgment, this Court makes the following findings and conclusions:

1. [P]laintiff Dandy Taylor was a trespasser on the premises where the incident occurred;

2. Defendant Duke, while acting in the course and scope of her employment with defendant J.B. Hunt Transport, Inc., was on the premises with the permission and at the direction of the occupier of those premises at the time of the incident. . . .

3. Defendants owed plaintiff Dandy Taylor only a duty to avoid willful[ly] and wantonly injuring plaintiff Taylor;

4. There is no evidence to support an inference that Jennifer Duke willfully or wantonly injured plaintiff Taylor. . . .

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the motions for summary judgment of defendants Jennifer Duke and J.B. Hunt Transport, Inc. are hereby granted in all respects and that the plaintiffs' first and second amend-

ed complaints as to defendants, Jennifer Duke and J.B. Hunt Transport, Inc., are hereby dismissed, with prejudice, costs to be paid by the plaintiffs.

(R. 511). It is from this order that Taylor appeals.

## DECISION

The purpose of summary judgment is to terminate causes of action which present no genuine issue as to any material fact and which may be determined as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on a motion for summary judgment, we employ the same standard as the trial court. *Frye v. Trustees of the Rumbletown Free Methodist Church*, 657 N.E.2d 745, 747 (Ind.Ct.App.1995), *reh'g denied.* Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. T.R. 56(C). We resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Rumbletown*, 657 N.E.2d at 747. We must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.*

We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Weber v. Costin*, 654 N.E.2d 1130, 1133 (Ind.Ct.App.1995). However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *Id.*

Taylor's complaint alleged that Duke and J.B. Hunt were negligent. In a negligence action, the plaintiff must prove three elements: 1) a duty owed to the plaintiff, 2) a breach of that duty by the defendant, and 3) the breach proximately caused the plaintiff's damages. *Smith v. Standard Life Insurance Company of Indiana*, 687 N.E.2d 214, 217 (Ind.Ct.App.1997). Concerning the duty element, the status of a person entering the land of another determines the duty that the landowner or occupi-

er owes to him. *Rumbletown*, 657 N.E.2d at 748.

Here, we note that Duke and J.B. Hunt were neither owners nor occupiers of the Venture property. However, the Restatement (Second) of Torts § 383 provides as follows:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

Restatement (Second) of Torts § 383 (1965). The Restatement further explains that the "words 'acting on behalf of the possessor' are used to indicate that the person in question is acting not only for the purposes of the possessor but also by his direction or consent and therefore by his authority." Restatement (Second) of Torts § 383 cmt. a (1965).

Both our supreme court and this court have previously relied on the Restatement (Second) of Torts in resolving premises liability questions. *See Burrell v. Meads*, 569 N.E.2d 637 (Ind.1991), *reh'g denied,* and *Rumbletown*, 657 N.E.2d at 745. In addition, other jurisdictions have applied the Restatement (Second) of Torts § 383 in deciding cases similar to the one at issue here. *See Zuniga v. Pay Less Drug Stores, N.W., Inc.*, 82 Wash.App. 12, 917 P.2d 584, 585 (1996) (truck driver on Pay Less property who ran over homeless man sleeping near the loading dock " 'enjoys the same freedom from liability' " as Pay Less, as he was plainly acting on its behalf.) (quoting *Jarr v. Seeco Construction Company*, 35 Wash.App. 324, 666 P.2d 392 (1983)) (quoting Restatement (Second) Torts § 383 (1965)); *Coleman v. Monson*, 522 N.W.2d 91 (Iowa Ct.App.1994) (duty of cleaning service to employee who slipped on employer's floor while it was being cleaned was the same as the possessor of the land); *Smith v. Inman Realty Company*, 846 S.W.2d 819, 822 (Tenn.Ct.App. 1992) ("[R]ealtors showing a house under a listing agreement with the owner are either possessors of the property or are acting on behalf of the possessors of the property for the purposes of Restatement (Second) of

Torts § 383 (1965) and, therefore, they may be held liable for the injuries sustained by customers inspecting the property.").

■ Like these other jurisdictions, we apply the Restatement (Second) Torts § 383 to the facts before us. Our review of the record reveals that J.B. Hunt and Venture had a written agreement for carrier services pursuant to which J.B. Hunt drivers delivered trailers full of merchandise to Venture and exchanged them for empty ones. J.B. Hunt was clearly acting not only for the purposes of Venture but also by its direction, consent and authority. Therefore, Duke and J.B. Hunt were acting on behalf of Venture and they are subject to the same liability or freedom from liability for physical harm caused to others upon the land as Venture.

■ We now turn to Taylor's status upon the land. The law is well-settled that a person entering the land of another comes upon the land either as an invitee, licensee or trespasser. *Dunifon v. Iovino,* 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* An invitee may fall within one of three categories: public invitee, business visitor or social guest. *Rumbletown,* 657 N.E.2d at 748. A public invitee is a person who is invited to enter or remain on another's land for the purpose for which it is held open to the public, *id,* and a business visitor is a person who is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land. *McCormick v. State,* 673 N.E.2d 829, 836 (Ind.Ct.App.1996)(citing *Burrell,* 569 N.E.2d at 637 and Restatement (Second) Torts § 332 (1965)). Licensees and trespassers are defined as those who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Rumbletown,* 657 N.E.2d at 749. Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance. *Id.*

■ A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's pro-

tection while he is on the premises. *Id.* Landowners owe a licensee the duty to refrain from willfully or wantonly injuring him or acting in a manner to increase his peril. *Id.* This includes the duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. *Id.* Finally, the duty owed to a trespasser is the duty merely to refrain from wantonly or willfully injuring him after discovering his presence. *Id.*

■ A person's status on the land, along with the duty owed, is a matter left for determination by the trial court. *Dunifon,* 665 N.E.2d at 55. Taylor argues that the trial court erred in determining that he was a trespasser to whom Duke and J.B. Hunt owed a duty to refrain from willfully or wantonly injuring. According to Taylor, he was an invitee on Venture's premises. We disagree.

■ Our review of the designated evidence reveals that at some point during the evening of September 5, 1995, Taylor was walking behind Venture on his way to the bridge under which he generally slept. He saw no one near the store and did not even know whether it was open for business. When it suddenly began to rain, Taylor sought shelter under a trailer parked against the back of the store on a slanted ramp in the loading dock area. Taylor entered Venture's premises for his own convenience, not for the purpose for which the premises are held open to the public. Further, he entered the premises without Venture's permission or sufferance. Taylor was therefore a trespasser to whom Duke and J.B. Hunt owed a duty to refrain from willfully or wantonly injuring.

■ In general, the duty to refrain from wantonly or willfully injuring a trespasser arises after his presence is discovered. *See Rumbletown,* 657 N.E.2d at 748. Duke did not discover Taylor until after he was injured. She and J.B. Hunt therefor argue that they owed him no duty. However, where, as here, the plaintiff alleges willful and wanton disregard for his safety in the defendant's failure to discover him, we will address the issue.

Taylor argues that the trial court erred in granting Duke and Hunt's summary judgment motion because there is a genuine issue of material fact "concerning whether Duke and J.B. Hunt acted with willful and wanton disregard for Taylor's safety." Taylor's Brief, p. 11. We disagree.

Wanton and willful conduct consists of either: (1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or (2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and has opportunity to avoid that risk. *Witham v. Norfolk and Western Railway Company*, 561 N.E.2d 484, 486 (Ind. 1990), *reh'g denied; Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1283 (Ind.Ct.App.1996). This conduct is comprised of two elements: (1) the defendant's knowledge of an impending danger or consciousness of misconduct calculated to result in probable injury; and (2) the defendant's conduct must have exhibited an indifference to the consequences of the act. *Witham* at 486; *Nesvig* at 1283.

Willful or wanton misconduct is "so grossly deviant from everyday standards that the licensee or trespasser cannot be expected to anticipate it." *Harper v. Kampschaefer*, 549 N.E.2d 1067, 1070 (Ind.Ct.App. 1990), *trans. denied.* Willfulness cannot exist without purpose or design. *Koop v. Bailey*, 502 N.E.2d 116, 118 (Ind.Ct.App.1986). Known probability of injury is the key to the consideration of wantonness. *Nesvig* at 1284.

Our review of the designated evidence reveals that at approximately midnight, Duke arrived at the Venture loading dock with a trailer full of Venture merchandise. She had made previous deliveries to this store, always arriving and departing when it was closed. She had never seen anyone in the loading dock area. That evening, after removing the full trailer that she brought to the store, Duke positioned her tractor to face the empty trailer that she planned to attach to her tractor and shined the tractor's headlights on the trailer to illuminate the area around it. She looked under the empty trailer for bottles, blocks and other debris. Finding nothing, she backed her tractor up to the empty trailer, connected the two vehicles, inched the tractor forward slightly to make sure that the vehicles were properly attached, and drove the tractor trailer unit away from the loading dock to the parking lot so that she could perform a required Department of Transportation inspection of the vehicles before she left the premises. When Duke exited the tractor, she discovered that she had run over a sleeping Taylor.

None of this designated evidence raises a genuine issue or inference that Duke and J.B. Hunt acted willfully or wantonly. Specifically, Taylor has designated no evidence that Duke and J.B. Hunt had knowledge of an impending danger or consciousness of misconduct calculated to result in probable injury or that their conduct exhibited an indifference to the consequences of the act. Further, Taylor has designated no evidence that Duke and J.B. Hunt's conduct was so grossly deviant from everyday standards that he could not have been expected to anticipate it. In fact, the designated evidence reveals that Taylor was aware that trailers are often attached to tractors and removed from loading dock areas. Taylor's argument is therefore unpersuasive, and the trial court did not err in granting Duke and J.B. Hunt's summary judgment motion.[1]

Affirmed.

SHARPNACK, C.J., and ROBB, J., concur.

---

1. Taylor also argues that the "trial court exceeded its authority in dismissing [his] complaints *sua sponte.*" Taylor's Brief, p. 20. In support of this contention, he directs us to the following emphasized language in the trial court's order:

[T]he motions for summary judgment of defendants Jennifer Duke and J.B. Hunt Transport, Inc. are hereby granted in all respects and that the plaintiff's first and seconded amended complaints as to defendants Jennifer Duke and J.B. Hunt Transport, Inc., *are hereby dismissed,* with prejudice, costs to be paid by the plaintiffs.

(R. 511). According to Taylor, the trial court "erred in dismissing the complaints because it did not have a motion to dismiss before it, it raised the issue *sua sponte,* and it failed to hold a hearing on dismissal. For all these reasons, the trial court should be reversed." Taylor's Brief, p. 22.

Taylor is correct that motions for summary judgment and motions to dismiss are separate and distinct pleadings. *See* 1 William F. Harvey, *Indiana Practice,* p. 607–08 (2nd ed.1987). He is also correct that the motion before the trial court was one for summary judgment. The trial court held a hearing on this motion and then issued an order granting it. It is apparent from the proceedings and the trial court's order that the trial court did not dismiss the case but granted judgment in favor of Duke and J.B. Hunt. The trial court's isolated reference in its order to a "dismissal" is mere surplusage which adds nothing to the trial court's decision and cannot constitute, as Taylor requests, the basis for reversal.