Kenneth E. SMITH, Jr. and Cathy
Smith, Husband and Wife,
Appellants–Plaintiffs,

and

Jeffery Harbrecht, Appellant–
Defendant,

v.

Gerhard KING and Christine King,
Husband and Wife, Appellees–
Defendants.

No. 45A03–0806–CV–308.

Court of Appeals of Indiana.

March 17, 2009.

William L. Touchette, Robert D. Brown, Spangler Jennings & Dougherty, Merrillville, IN, David N. Gilyan, Hobart, IN, Attorneys for Appellants.

Matthew J. Hagenow, Newby Lewis Kaminski & Jones, La Porte, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Kenneth E. Smith, Jr., Cathy Smith, and Jeffery Harbrecht appeal the trial court's grant of summary judgment to Gerhard King and Christine King. The Smiths and Harbrecht raise one issue, which we restate as whether the trial court erred when it determined that the Kings did not owe a duty to Kenneth. We affirm.

The relevant facts as designated to the trial court follow. In 2000, the Kings began construction of a new residence on their property. Gerhard King acted as a general contractor on the project and hired various subcontractors to perform most of the work. Gerhard visited the jobsite on a daily basis at the beginning, but as the construction progressed, he visited the site "every other day or every third day." Appellant's Appendix at 121–122. Gerhard also performed some of the work, such as the flooring, himself. Additionally, during the construction, the Kings had problems with water in the basement, and Gerhard would pump the water out. The Kings hired Harbrecht to perform the framing and carpentry work and hired Lake Heating and Ventilating to perform the heating and air conditioning work. Kenneth Smith, Jr., is the owner of Lake Heating and Ventilating.

In June 2000, Harbrecht had not yet completed the stairs from the residence's first floor to the basement, leaving an open

hole in the floor. Gerhard was concerned about the open hole and nailed a plywood sheet against the opening. In mid-to late-June 2000, according to Kenneth Smith, Gerhard called Kenneth, instructed him to begin installation of the heating and cooling system, and told Kenneth that he would not need a key because the house was not secure yet. When Kenneth and his employee, Tom Cox, went to the residence to begin the installation, they discovered that the doors were locked, and they had to climb through an open soffit above a kitchen wall to enter the residence. However, they soon had to leave the residence because of a rain storm. A week later, Kenneth and Cox returned to the residence. Kenneth saw a four-by-eight piece of plywood "laying up against [the] opening" to the basement. *Id.* at 161. Kenneth and Cox climbed down a ladder and went into the basement where they discovered two to three inches of water.

Kenneth and Cox returned to the Kings' residence a few days later on July 5, 2000. Kenneth was using a tape measure over his head and was walking "sideways" when he stepped into the uncovered stairway opening and fell into the basement. *Id.* at 85. The plywood sheet was not in place, and there was no water in the basement at that time. Kenneth sustained severe injuries as a result of his fall.

The Smiths filed a complaint against the Kings and Harbrecht for negligence.[1] The Kings then filed a motion for summary judgment, alleging that the Smiths' negligence claim failed because the Kings, as either the owners of the property or the general contractor, had no duty to Kenneth and that they were not vicariously liable for Harbrecht's negligence. Both Harbrecht and the Smiths filed responses to the Kings' motion for summary judgment. After a hearing, the trial court entered summary judgment for the Kings on the Smiths' claims. The trial court found that the Kings did not owe a duty to Kenneth in their capacity as property owners or in their capacity as general contractor. Further, the trial court found that the Kings were not vicariously liable for Harbrecht's negligence and that the Kings had not assumed a duty to Kenneth.

The issue on appeal is whether the trial court erred when it determined that the Kings did not owe a duty to Kenneth. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court, *Id.* at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a

---

1. A default judgment was granted against the Kings, but the Kings filed a motion to set aside the default judgment, which was granted by the trial court. The Smiths appealed the grant of the motion to set aside, and we affirmed. *Smith v. King.*, No. 45A04–0411–CV–609, 842 N.E.2d 894 (Ind.Ct.App. Jan. 18, 2006).

statement of reasons for the trial court's actions. *Id.*

■■ "In order to prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Peters v. Forster,* 804 N.E.2d 736, 738 (Ind.2004). In negligence cases, summary judgment is "rarely appropriate." *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.*

■■ The trial court granted summary judgment because it found the Kings did not owe a duty to Kenneth. "[T]he existence of a duty is ordinarily a question of law for the court to decide, but it may turn on factual issues that must be resolved by the trier of fact." *Kopczynski v. Barger,* 887 N.E.2d 928, 931 (Ind.2008). "Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach." *Peters,* 804 N.E.2d at 738. On appeal, the Smiths and Harbrecht argue that the Kings owed a duty to Kenneth either in their capacity as property owners, in Gerhard's capacity as general contractor, or through the assumption of a duty by their conduct.

### A. *Duty as Property Owners.*

■ The trial court concluded that the Kings, in their capacity as landowners, had no duty to Kenneth. Specifically, the trial court found:

7. As landowners, the Kings had no duty to furnish Smith, a subcontractor, a safe place to work. *Merrill v. Knauf Fiber Glass,* 771 N.E.2d 1258, 1264 (Ind.Ct.App.2002). However,

the Kings did owe a duty to keep the property in a reasonably safe condition for Smith and his employees. *Id.* at p. 1265. This duty is defined by the Restatement (Second) of Torts, Section 343 (1965). The Kings had a duty to Smith and his employees if they knew, or in the exercise of reasonable care, would have discovered a dangerous condition and realized that it involved an unreasonable risk of harm to Smith; and should have expected that Smith would not discover or realize the danger or would fail to protect himself against it; and failed to exercise reasonable care to protect Smith from the danger. *Id.* at p. 1265 and *Pelak v. Indiana Industrial Services, Inc.,* 831 N.E.2d 765, 769 (Ind. Ct.App.2005).

8. Smith's deposition testimony establishes that he visited the job site before the day he was injured. Indeed, Smith inspected the job site and even accessed the basement by using a ladder to descend into the basement from the first floor through the very hole that he fell through on the day he was injured. Smith has admitted that he lost track of where he was on the day of the injury and fell through the hole.

9. Smith's familiarity with the job site and prior knowledge of the danger leaves this Court to conclude that the Kings, as landowners, owed no duty to Smith under Section 343, Restatement (Second) of Torts.[ ]

Appellant's Appendix at 20–21 (footnote omitted).

■■ As a general rule, a property owner has no duty to furnish the employees of an independent contractor a safe place to work, at least as that duty is imposed on employers. *Merrill v. Knauf*

*Fiber Glass GmbH,* 771 N.E.2d 1258, 1264 (Ind.Ct.App.2002), *trans. denied.* The property owner must however maintain the property in a reasonably safe condition for business invitees, including independent contractors and their employees. *Id.* at 1264–1265. Indiana has adopted the Restatement (Second) of Torts, which provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts, § 343. Further, section 343A(1) of the Restatement (Second) of Torts provides, "a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." The Indiana Supreme Court has recognized that, "[i]n premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred." *Rhodes,* 805 N.E.2d at 385. "The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." *Id.*

Here, the Kings argue that they were not in control of safety at the job site. However, the issue is not whether the Kings were in control of safety in general at the job site; rather, the Kings were required to maintain the property in a reasonably safe condition for independent contractors and their employees. The issue, under the Restatement, is whether the Kings: (a) knew or by the exercise of reasonable care would have discovered the open hole and should have realized that it involved an unreasonable risk of harm to Kenneth; (b) should have expected that Kenneth would not discover or realize the danger or would fail to protect himself against it; and (c) failed to exercise reasonable care to protect Kenneth against the danger. Further, the Kings are not liable if the danger was known or obvious to Kenneth, unless the Kings should have anticipated the harm despite such knowledge or obviousness.

The trial court essentially found that the danger of the hole was known and obvious to Kenneth. We agree. The designated evidence demonstrates that Kenneth was aware of the hole leading to the basement. In fact, on Kenneth's second visit to the residence, Kenneth and his employee climbed down a ladder into the basement. On Kenneth's third visit to the residence, Kenneth was using a tape measure over his head and was walking "sideways" when he stepped into the uncovered stairway opening and fell into the basement. Appellant's Appendix at 85.

This case is similar to *Merrill,* 771 N.E.2d at 1265–1267. There, Knauf hired Ellerman Roofing to perform repairs to its roof. Ellerman Roofing was in control of the manner by which the roof was repaired and the resources used in the project. Merrill, one of Ellerman Roofing's employees, became distracted, stepped on a skylight, and fell through it. We affirmed the trial court's grant of summary judgment to Knauf. Merrill admitted that he knew the skylights were dangerous and that he typi-

cally was cautious around them. We concluded that "[t]he evidence [did] not support a reasonable inference that Knauf should have anticipated that another Ellerman Roofing employee would distract Merrill and that Merrill would step onto and fall through a skylight." *Id.* at 1267. Similarly, here, the danger of the hole was known and obvious to Kenneth, and the evidence does not support a reasonable inference that the Kings should have anticipated that Kenneth would fall through the hole while measuring over his head for the heating and cooling system. Consequently, we conclude that the trial court did not err by granting the Kings' motion for summary judgment on this issue. *See, e.g., id.*

### B.  *Duty as General Contractor.*

■ Citing *Stumpf v. Hagerman Construction Corp.,* 863 N.E.2d 871 (Ind. Ct.App.2007), *trans. denied,* the trial court held that Gerhard, in his role as general contractor, "did not have a duty to assure Smith a safe workplace." Appellant's Appendix at 21. We acknowledge that "an employer does not have a duty to supervise the work of an independent contractor to assure a safe workplace and consequently is not liable for the negligence of the independent contractor." *Stumpf,* 863 N.E.2d at 876. The rationale behind this rule is that "a general contractor typically exercises little, if any, control over the means or manner of the work of its subcontractors, and requires only that the completed work meet the specifications of the owner in its contract with the general contractor." *Id.* (quoting *Harris v. Kettelhut,* 468 N.E.2d 1069, 1072 (Ind.Ct.App. 1984), *trans. denied*). Indiana courts have recognized five exceptions to this general rule: (1) where the contract requires the performance of intrinsically dangerous work; (2) where one party is by law or contract charged with performing the specific duty; (3) where the performance of the contracted act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Id.* (citing *Merrill,* 771 N.E.2d at 1267).

■ However, here, the Smiths and Harbrecht argue that Gerhard was negligent in his own actions, not that one of the above exceptions applies. The Indiana Supreme Court has held that "a contractor has a duty to use reasonable care both in his or her work and in the course of performance of the work." *Peters,* 804 N.E.2d at 743. The Kings argue that this issue is waived by the failure of Harbrecht or the Smiths to present it to the trial court. We agree. "A party generally waives appellate review of an issue or argument unless that party presented that issue or argument before the trial court." *GKC Indiana Theatres, Inc., v. Elk Retail Investors, LLC,* 764 N.E.2d 647, 652 (Ind. Ct.App.2002). Our review of the record reveals that the Smiths and Harbrecht did not argue to the trial court that the Kings were liable based upon Gerhard's own negligence as a general contractor. Consequently, the argument is waived.

### C.  *Assumption of a Duty by Conduct.*

■ A duty of care may arise where a party gratuitously or voluntarily assumes a duty by conduct. *Merrill,* 771 N.E.2d at 1270. "The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Id.* The existence and extent of such a duty are ordinarily questions for the trier of fact. *Id.* However, the court will decide the issue as a matter of law when the record contains insufficient evidence to establish such a duty. *Id.*

■ The trial court rejected an argument that the Kings had assumed a duty, finding as follows:

Smith also argues that the Kings assumed a duty when Mr. King boarded up a hole in the wall leading to the opening from the first floor to the basement. A duty of care may arise where one party assumes such a duty, either gratuitously or voluntarily, and the assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a manner of a reasonably prudent person. *Robinson v. Kinnick*, 548 N.E.2d 1167, 1168 (Ind. Ct.App.1989). However, in order to assume such a duty, Mr. King must have done more than merely board up a hole in the wall. Instead, activities such as holding regular safety meetings and inspecting the job site on a daily basis are required. *Id.* at [ ] 1169. In this case, there is no evidence from which this Court can conclude that the Kings voluntarily assumed a duty to provide Smith with a safe workplace because Mr. King did not exercise the level of activity that would constitute a deliberate attempt to control or actively supervise safety at the job site. *Merrill v. Knauf Fiber Glass*, 771 N.E.2d at [ ] 1271.

Appellant's Appendix at 21. Thus, the trial court concluded that the Kings did not assume a duty because they did not actively control or supervise safety at the site.

On appeal, the Smiths argue that the Kings assumed a duty to Kenneth by placing a plywood board against the opening to the basement. We addressed a similar situation in *Robinson v. Kinnick*, 548 N.E.2d 1167, 1169 (Ind.Ct.App.1989), *reh'g denied, trans. denied.* There, the Kinnicks hired Robinson to perform roofing work at their residence. The Kinnicks provided certain safety equipment to the independent contractors and nailed two by four inch toeboards to the top of the roof where Robinson was working. Although

Robinson saw water, frost, and ice on the roof's surface, he proceeded to perform the work. He then slipped on the ice, slid down the roof, and fell 26 feet to the ground. The trial court granted summary judgment to the Kinnicks, and we affirmed on appeal. We noted that "the Kinnicks did not appoint a safety director to supervise the job site, did not hold safety meetings, and did not prescribe any safety precautions to be taken on the project or provide written safety rules to persons at the site." 548 N.E.2d at 1169. "Further, the Kinnicks did not conduct daily inspections of the project in general or of the roof in particular or advise any of the workers at the site about what safety equipment to utilize." *Id.* With respect to the toeboards nailed on the roof, we concluded that "in the absence of any other evidence indicating the contrary, one or two instances of safety precautions taken by the defendant does not raise a jury question as to whether a duty was assumed." *Id.* at 1170.

Here, because Harbrecht had not yet completed the stairs from the residence's first floor to the basement, leaving an open hole in the floor, Gerhard King nailed a plywood sheet against the opening. As in *Robinson,* this one instance of a safety precaution taken by the Kings does not raise a jury question as to whether a duty was assumed. Under these circumstances, we conclude that the trial court did not err by granting summary judgment on this basis. *See, e.g., id.*

For the foregoing reasons, we affirm the trial court's grant of summary judgment to the Kings.

Affirmed.

ROBB, J., and CRONE, J., concur.