**Peggy J. RIDER and James R. Rider,**
**Appellants–Plaintiffs,**

v.

**Larry L. McCAMMENT and Cynthia R. McCamment, individually, and Larry L. McCamment and Cynthia R. McCamment, d/b/a McCamment Homes, LLC, and Charles Lee, individually, and Charles Lee d/b/a C & R Supplies, Inc., and Charles Lee d/b/a Lee Construction Company, Appellees–Defendants.**

No. 16A01–1004–CT–180.

Court of Appeals of Indiana.

Dec. 6, 2010.

John P. Daly, Jr., Cohen & Malad, LLP, Indianapolis, IN, Attorney for Appellants.

Mark W. McNeely, McNeely Law Offices, Shelbyville, IN, Barbara A. Jones, Cantrell, Strenski & Mehringer, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Peggy J. Rider (Peggy) and James R. Rider (collectively, Rider), appeal the trial court's grant of summary judgment to Appellees–Defendants, Larry L. McCamment and Cynthia R. McCamment, individually, and Larry L.

McCamment and Cynthia R. McCamment, d/b/a McCamment Homes, L.L.C. (collectively, McCamment), and Charles Lee, individually, and Charles Lee, d/b/a C & R Supplies, Inc. and Lee Construction Company (collectively, Lee) with respect to Rider's claim for negligence resulting in personal injuries.

We affirm, in part, and reverse, in part.

## ISSUE

Rider raises one issue on appeal, which we restate as follows: Whether the trial court properly entered summary judgment in favor of McCamment and Lee.

## FACTS AND PROCEDURAL HISTORY

On May 8, 2006, Rider and McCamment entered into an agreement for the purchase a house in Greensburg, Indiana. McCamment was in the business of constructing and selling houses and Rider was a prospective buyer interested in one. At the time of entering into the purchase agreement, the house was still under construction and the parties agreed that it would be finished by the closing date, which was scheduled for September 15, 2006. To build the house, McCamment contracted with Lee, who performed all required labor except installing the heating and cooling, laying the carpet, and finishing the drywall. McCamment provided Lee with a lot, plans, and all materials.

The purchase agreement between Rider and McCamment provided that the buyer had the right for final inspection. It also included a provision that only licensed inspectors or qualified contractors could conduct the inspection. The purchase agreement required that a visitor should obtain permission from either McCamment or a real estate agent, retained pursuant to a separate listing agreement, prior to visiting the house. Despite the right to inspec-tion, the purchase agreement stipulated that possession of the house was not to be delivered until closing.

Peggy obtained McCamment's permission to visit the construction site once. She called McCamment and arranged a meeting to discuss placement of electrical receptacles, installation of a handicap toilet, and other changes to the standard house plan. They met at another similar house in the subdivision. Peggy also visited the house thirty to thirty-five times between April and August 2006 without anyone's permission.

On August 9, 2006, Lee and his two-man crew were working on the deck at the back of the house. At approximately 11:00 a.m., rain started. Lee and his men decided to interrupt their work and leave for lunch early. It was obvious that the deck was not finished yet. Lee still needed to reposition the steps to the side of the deck and to install the vertical posts on the side of the deck. Lee expected to finish the deck in about two hours.

Sometime after Lee and his men left, Peggy and her daughter arrived unannounced to check the construction. They entered the empty house and proceeded to the back. Peggy went out onto the deck through the sliding glass doors. She advanced further to the side of the deck and leaned over the railing to look at the drop off. The railing gave way and Peggy fell to the ground sustaining multiple and severe injuries.

Lee and his crew returned from their lunch to finish the deck and encountered Peggy's son and daughter. At this time, Lee discovered that Peggy and her daughter came to the house while he and his crew were at lunch and that Peggy fell off the unfinished deck. Peggy had already left by ambulance when Lee and his men

returned. Later that day, Lee finished the deck.

On January 8, 2008, Rider filed a complaint against McCamment and Lee in the Decatur Circuit Court alleging negligence. On December 16, 2009, McCamment filed a motion for summary judgment claiming that he did not owe duty of care to Rider. Lee followed, filing his motion for summary judgment on December 31, 2009, also claiming that he did not owe duty of care to Rider. On March 23, 2010, the trial court summarily granted both motions for summary judgment.

Rider now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Rider argues that the trial court erred in granting McCamment's and Lee's motions for summary judgment. Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind.Ct.App.2008), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–608. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's

cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.* When the parties have filed cross-motions on summary judgment, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

We observe that in the present case, the trial court did not enter findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id.* However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

Here, the trial court granted summary judgment because it found that McCamment and Lee did not owe a duty to Rider under a claim of negligence. In a negligence action, the plaintiff must prove three elements: 1) a duty owed to the plaintiff, 2) a breach of that duty by the defendant, and 3) the breach proximately caused the plaintiff's damages. *Reed v. Beachy Constr. Corp.*, 781 N.E.2d 1145, 1148 (Ind.Ct.App.2002), *trans. denied.* A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim. *Id.*

On appeal, Rider specifically argues that McCamment and Lee owed her a duty of care based on the premises liability theory because she was a business invitee. Indeed, the person's status on the land defines the nature of the duty owed by the landowner to the visitor. *Id.* Therefore, typically, the first step in resolving a premises liability case is to determine the

plaintiff's visitor status. *Id.* Here, however, we determine that the issue is not Rider's visitor status, but rather the defendants' respective statuses as a landowner and an independent contractor.

## I. *Landowner's Duty of Care*

■■■ The undisputed designated facts reveal that McCamment was the landowner of the premises when Rider visited the construction site and fell from the deck sustaining injuries[1]. McCamment and Rider signed a contract for purchase of the house on May 8, 2006. However, they agreed to deliver the possession of the house only at closing on September 15, 2006. Thus, Rider was not in possession of the house when she made her unfortunate visit to the site. Moreover, the fact that McCamment conducted his business as a general contractor, hiring subcontractors to perform various parts of the construction, does not change our analysis of his duties to Rider. A general contractor, as opposed to an independent contractor, acting on behalf of a landowner is subject to the same liability or freedom from liability as the landowner. *Taylor v. Duke,* 713 N.E.2d 877, 880 (Ind.Ct.App.1999) (quoting Restatement (Second) of Torts § 383). The words "acting on behalf of the landowner" are used to indicate that the general contractor is acting for the purposes of the landowner, by his direction, consent, and authority. *Id.* (quoting Restatement (Second) of Torts § 383 cmt. a). The rationale is that a general contractor typically exercises little, if any, control over the means or manner of the work of its subcontractors, and requires only that the completed work meet the specifications of the owner in its contract with the general contractor. *Smith v. King,* 902 N.E.2d 878, 883 (Ind.Ct.App.2009). Here, McCamment-general contractor was subject to the same liability or freedom from liability as McCamment-landowner. As such, because he is the same person and his duties are the same, we will examine only the landowner's status.

■■■ The landowner's duty of care to a person entering the land depends on whether the person is an invitee, a licensee, or a trespasser. *Taylor,* 713 N.E.2d at 880–881. An invitee may fall within one of three categories: public invitee, business visitor, or social guest. *Id.* at 881. A public invitee is a person who is invited to enter or remain on another's land for the purpose for which it is held open to the public. *Id.* A business visitor is a person who is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land. *Id.* Licensees and trespassers are defined as those who enter the land of another for their own convenience, curiosity, or entertainment and take the premises as they find them. *Id.* Unlike trespassers, however, licensees have a privilege to enter or remain on the land by virtue of the landowner's or occupier's permission or sufferance. *Id.*

■■■ A landowner owes the highest duty of care to an invitee, that duty being to exercise reasonable care for the invitee's protection while she is on the premises. *Id.* Landowners owe a licensee the duty to refrain from willfully or wantonly injuring her or acting in a manner to increase her peril. *Id.* This includes the duty to warn a licensee of any latent danger on the premises of which the landowner has knowledge. *Id.* Finally, the duty owed to a trespasser is the duty merely to

---

1. Rider acknowledged in her Complaint that McCamment was the owner of the house. Rider also did not designate evidence to the contrary despite her assertion in the brief that she was the owner of the house when the accident occurred.

refrain from wantonly or willfully injuring her after discovering her presence. *Id.*

However, even when dealing with an invitee, the landowner's duty of care is not limitless. The most common example of the limitation is when an invitee exceeds the scope of invitation, she loses her status. *See Markle v. Hacienda Mexican Rest.,* 570 N.E.2d 969, 974 (Ind. Ct.App.1991) (holding that even though a visitor may be an invitee when she first enters the premises, her status may change to licensee while she is there if the use to which she puts the property is not within the scope of the invitation). Further, a landowner is not liable if the danger was obvious, unless the landowner should anticipate the harm despite such knowledge and obviousness. *See Smith,* 902 N.E.2d at 882. Finally, a landowner is not liable if the landowner did not control the premises and there was someone else, *e.g.,* a contractor, who controlled the premises when the accident occurred. *See Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind.2004) ("[i]n premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred"). The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm. *Id.*

We find that the present case is similar to *Reed.* In *Reed,* a visitor sustained injuries when she fell on the stairs of the rear deck while visiting a house on a tour for potential homebuyers. *Reed,* 781 N.E.2d at 1147. The visitor filed a premises liability suit against the landowners and the builder. *Id.* The trial court granted the landowners' and the builder's summary judgment motions and the visitor appealed. *Id.* On appeal, the court addressed the landowners' and the builder's duties sepa-

rately. *Id.* at 1148, 1150. As for the landowners' duty, the court affirmed the summary judgment. *Id.* at 1150. The court held that "the simple fact of ownership is not necessarily dispositive of the question of possession or control and the duty that arises therefrom." *Id.* Based on the designated evidence, the *Reed* court concluded that the landowners did not control the premises because the landowners had postponed possession of the premises and surrendered control of it to the builder for purposes of the tour. *Id.*

Here, similarly, the mere fact that McCamment owned the premises is not dispositive of the question of possession or control and the resulting duty of care to Rider. Like the landowners in *Reed,* McCamment was not in actual possession or control of the deck when the accident occurred. Specifically, McCamment was not in actual possession because he was not present at the construction site when Rider inspected the deck. He learned that Rider fell from the deck only after he spoke to Lee over the phone. McCamment also was not in control of the premises because he did not perform any work on it on the day of the accident or any other day over the course of construction. *See Helton v. Harbrecht,* 701 N.E.2d 1265, 1268 (Ind.Ct.App.1998), *trans. denied* (holding that the builder did not owe a duty of care to the visitor because the builder did not exert control over the premises at the time of the visitor's injury; the builder was away from the site for approximately one month and the visitor's son was actually working on the premises on the day of the accident).

Accordingly, McCamment did not control the premises for purposes of establishing a duty of care to Rider because he did not exercise actual possession or control over the deck, was not present at the site on the accident day, and had a contractor

do the immediate work. Absent the control element, McCamment prevails on his summary judgment motion because Rider's negligence claim against McCamment fails as matter of law. *See Reed*, 781 N.E.2d at 1148; *Pelak v. Indiana Indus. Serv., Inc.*, 831 N.E.2d 765, 770 (Ind.Ct. App.2005), *trans. denied.* We conclude that the trial court properly granted summary judgment in favor of McCamment.

## II. *Contractor's Duty of Care*

We now turn to the analysis of the independent contractor's duty. It is undisputed that Lee was an independent contractor contracted by McCamment to build the residence. In general, a contractor has a duty to use ordinary care both in his work and in the course of performance of the work. *Horine v. Homes by Dave Thompson, LLC*, 834 N.E.2d 680, 684 (Ind. Ct.App.2005). Where an independent contractor is in control of the construction or premises and the independent contractor's negligence results in injury to another person on the premises, the independent contractor may be held liable under Indiana law. *Id.* In determining whether Lee owed a duty of care to Rider, we must examine (1) whether Lee was performing work and was in control of the construction or premises, and (2) whether Rider was rightfully on the premises. *Id.* In determining whether Rider was rightfully on the premises, we also must examine whether it was foreseeable that Rider would visit the construction site and be harmed by stepping onto the deck. *Guy's Concrete, Inc. v. Crawford*, 793 N.E.2d 288, 296 (Ind.Ct.App.2003).

As to the first inquiry, the designated evidence reflects that Lee was present at the site on the accident day. Lee worked on the deck right before the accident and a short time after the accident. As such, we conclude that Lee was in actual possession and control of the deck for the purposes of establishing a duty of care to Rider.

We next address whether Rider was rightfully on the premises and whether it was foreseeable that she would visit the house and be harmed during her inspection. The undisputed designated evidence reveals that McCamment and Rider had a contract which provided a protocol for inspections. According to the protocol, Rider was required to obtain permission prior to visiting the house. Nonetheless, Rider visited the construction site thirty to thirty-five times between April and August of 2006 without getting anyone's permission. Rider followed the protocol only once prior to meeting with McCamment and Lee at another house in the subdivision to discuss certain changes to the standard house plan. Both McCamment and Lee argue that this prearranged meeting was the only time when they met Rider. Rider disagrees. She claims that she saw Lee four to five times at the building site during the course of the construction. Rider also contends that she typically met with the real estate agent to discuss the problems with the construction, yet the real estate agent claims that he was unaware of Rider's thirty to thirty-five visits.

As such, based on these conflicting facts, we are unable to draw reasonable inferences as to whether Lee saw Rider or knew that she frequented the construction site. Although Lee exercised control over the premises, the facts designated to us by the parties are not sufficient to conclude whether Rider was rightfully on the premises and whether she was a foreseeable visitor. We hold that the trial court erred in granting summary judgment in favor of Lee.

## CONCLUSION

Based on foregoing we conclude that the trial court properly entered summary

judgment in favor of McCamment and erred in entering summary judgment in favor of Lee.

Affirmed, in part, and reversed, in part.

DARDEN, J., concur.

KIRSCH, J., concurring in part and dissenting in part with opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

I fully concur in the decision of my colleagues that summary judgment was properly entered for the McCamment defendants, but I respectfully dissent from their decision to reverse the entry of summary judgment for the Lee defendants.

Construction sites are fraught with peril and involve dangers that are inherent to the construction industry. Until the construction process is completed, those who enter upon a construction site encounter foundation walls that are not back-filled, roof trusses that are not fully braced, electrical connections that are exposed, power tools of all descriptions, and, as here, railings that are not secure. Because of the dangers presented, government regulations require that those who work at such sites take extensive safety precautions including hard hats, work shoes, safety goggles, and the like. These requirements are imposed even though those who work on such sites may be experienced and know of the dangers presented.

The same concern for safety underlay the provision in the construction contract here at issue that required the plaintiff home buyers to obtain permission before coming on the construction site. It is undisputed that the plaintiffs had not obtained such permission on the day that Peggy Rider was injured. It is similarly undisputed that neither Charles Lee, nor his crew, was at the site when the injury was sustained.

In holding that there is a material question of fact whether Peggy Rider was rightfully upon the premises on the day in which she sustained her injuries, I believe the majority places an impossible burden on contractors. Nothing in the designated materials gives rise to any inference that Lee could or should have anticipated Rider's presence at the construction site. She did not follow the protocol set out in the contract, and she did not notify Lee or McCamment that she would be coming upon the premises.

My colleagues conclude that Rider's claim to have entered upon the premises a number of times when Lee was present and without McCamment's permission gives rise to a material question of fact regarding whether she was rightfully upon the premises on the day in question. I disagree.

To me, it is reasonable to impose a duty on a contractor when he knows that a party is upon the premises. When Lee was present, he had the ability to warn Rider of potentially dangerous areas or conditions—such as a partially completed railing. He did not have such an ability when he was not present.

Assuming that Rider did enter upon the premises previously when Lee was present does not lead to the conclusion that Lee should have foreseen her presence when he was not. There is nothing in the designated materials to support an inference that Lee knew or should have known that Rider was entering upon the premises when neither he, nor his crew, was present. To hold that Lee should have foreseen that Rider would enter upon the premises in his absence and without permission or notice inflates the concept of duty to infinite proportions. Under the duty imposed by the majority, Lee could have protected himself from liability only

by stationing a guard upon the premises to insure that neither Rider, nor anyone else, entered upon the inherently dangerous worksite. I do not think that such a requirement is reasonable or financially feasible.

To me, the issue presented here is more properly stated not as the duty owed by Lee, but the risk incurred by Rider. I believe that one who enters upon an inherently dangerous construction site in the absence of either permission or notice incurs the risks of such inherent dangers as a matter of law.

I would affirm the trial court in all respects.