

FILED

Dec 09 2019, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Steven P. Lammers
Allyse E. Wirkkala
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Andrew B. Miller
Logansport, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Buckingham Management LLC,
et al.,

*Appellants-Defendants,*

v.

Tri-Esco, Inc.,

*Appellee-Defendant.*

December 9, 2019

Court of Appeals Case No.
19A-CT-657

Appeal from the Tippecanoe
Superior Court

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1701-CT-7

**Altice, Judge.**

## Case Summary

[1] Buckingham Management, L.L.C., d/b/a Bradford Place Apartments (Bradford),

appeals from the grant of summary judgment in favor of Tri-Esco, Inc. (Tri-Esco).

Bradford claims that genuine issues of material fact exist as to whether Tri-Esco exercised reasonable care in performing its snow and ice removal duties after the plaintiff, Deborah Perez, slipped and fell on ice in Bradford's parking lot.

We affirm.

### Facts & Procedural History[1]

Bradford is an apartment complex in Lafayette that Buckingham manages. On February 23, 2015, at approximately 7:00 a.m., Perez drove to Bradford where her daughter lived. Perez was going to pick up her grandchildren and take them to school. When Perez arrived at Bradford and was exiting her vehicle in the parking lot, she noticed that the lot was "pretty much ice." *Appellant's Appendix Vol. III* at 47. Perez walked toward her daughter's residence, balancing herself against her vehicle. At some point, Perez slipped and fell and landed on her left arm and shoulder. As a result of the fall, Perez claimed that she was injured and was—and still is—in physical pain.

The record shows that on October 17, 2014, Bradford's owner—Lafayette Housing Associates (Lafayette Housing)—entered into a Services Agreement (Agreement) with Tri-Esco for snow removal. The Agreement provided that Tri-Esco was to

---

[1] Oral argument was held on October 31, 2019 at Hanover Central High School in Cedar Lake, Indiana. We extend many thanks. First, we thank counsel for the quality of their oral and written advocacy, for participating in post-argument discussions with the audience, and for commuting to Lake County, Indiana. We especially thank the staff and administration at the high school for their accommodations and the students in the audience for their thoughtful post-argument questions.

remove snow and ice from the streets running through Bradford and the parking lot where Perez fell. If it snowed at least two inches, Tri-Esco was to clear the ice and snow at Bradford without an explicit request by Bradford's management to do so. The initial proposal and the "snow removal specifications" set forth in the Agreement provided that Tri-Esco would salt the driveways or parking lots *only* upon Bradford's specific request. *Appellant's Appendix Vol. II* at 48, 90, 113, 119. Another clause stated that "[s]alting shall be performed without request as warranted by ice/snow conditions for all communities. . . ." *Id.* at 70, 115, 165. Finally, the Agreement provided that the "[s]alting of streets will be authorized by the Maintenance Supervisor or Property Manager." *Id.* at 68, 113, 163.

[5] It was undisputed that discretionary salting by Tri-Esco never occurred, and there was no requirement that Tri-Esco was to make periodic inspections of the property. In short, Tri-Esco salted only upon Bradford's express request that it do so. All provisions of the Agreement were initialed by a Tri-Esco representative.

[6] The designated evidence established that Tri-Esco did not maintain any consistent presence on the premises, unlike Bradford's onsite maintenance crew. Bradford purchases approximately two-and-one-half tons of bagged salt each winter for its own snow and ice removal. Bradford has snow removal equipment and a salt applicator on the property for the management of its sidewalks.

[7] On February 21, two days prior to Perez's fall, Tri-Esco removed snow at Bradford with pickup trucks and plows. That same day, Bradford employees applied nine bags of ice melt on the premises. Neither Tri-Esco nor Bradford engaged in

additional snow removal or salt application on the premises after February 21, and Bradford did not request Tri-Esco to do so. Bradford conceded that Tri-Esco had no contractual obligation to be on site after the initial snow removal because the two-inch snowfall provision in the Agreement was not triggered. Bradford further admitted that it had no expectation that Tri-Esco would provide any snow removal or salting services on February 22 or 23.

[8] On January 19, 2017, Perez filed a complaint against Bradford and Tri-Esco, seeking damages for her injuries, which included compensation for various surgeries. Perez alleged that she suffered injury due to the negligence and carelessness of the agents and/or employees of Bradford and Tri-Esco for failing to: (1) properly inspect and maintain the property in a safe condition; (2) put down salt; (3) remove snow and ice; and (4) warn of the dangerous condition. Tri-Esco and Bradford denied the allegations and raised affirmative defenses in their answers to the complaint.

[9] On October 1, 2018, Tri-Esco filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law because the designated evidence failed to establish that it had a duty to apply salt to the parking lot during the two days prior to the fall. Tri-Esco also asserted that there was no additional snowfall during that period that contractually obligated it to perform any services absent Bradford's explicit request that it do so. Tri-Esco claimed that it was under no obligation to preemptively inspect and/or provide services to Bradford and, therefore, no duty was owed because it lacked any control over the premises.

Following a hearing on Tri-Esco's motion, the trial court granted summary judgment in its favor on February 21, 2019. Bradford now appeals.[2]

## Discussion & Decision

[10] When reviewing the grant of summary judgment, this court applies the same standard as the trial court. *City of Mishawaka v. Kvale*, 810 N.E.2d 1129, 1132 (Ind. Ct. App. 2004). The purpose of summary judgment is to terminate litigation if there are no genuine, material factual disputes and the issue can be determined as a matter of law. Indiana Trial Rule 56(C); *Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 184 (Ind. Ct. App. 2004), *trans. denied*. A fact is "material" for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action. *Schrum v. Moskaluk*, 655 N.E.2d 561, 564 (Ind. Ct. App. 1995), *trans. denied.* A factual issue is "genuine" if the trier of fact must resolve the opposing party's differing versions of the underlying facts. *Sammadar v. Jones*, 766 N.E.2d 1275, 1279 (Ind. Ct. App. 2002). Once the moving party makes a prima facie showing of the nonexistence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing the existence of a genuine issue for trial. *Dugan v. Mittal Steel USA Inc.,* 929 N.E.2d 184, 185-86 (Ind. 2010).

---

[2] Perez has not challenged the grant of summary judgment in Tri-Esco's favor.

Bradford claims that the trial court erred in granting summary judgment for Tri-Esco because there is a genuine issue of material fact as to whether Tri-Esco exercised reasonable care in performing the snow removal on February 21, 2015, and whether Tri-Esco was required to apply salt to the premises absent a specific request by Bradford that it do so.

To recover under a theory of negligence, a plaintiff must establish the following elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a failure by the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the failure. *Anderson v. Four Seasons Equestrian Ctr., Inc.*, 852 N.E.2d 576, 580 (Ind. Ct. App. 2006), *trans. denied.* Duty is a question of law for the court to decide. Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach. *Wilson v. Haimbaugh*, 482 N.E.2d 486, 487 (Ind. Ct. App. 1985). Whether the law recognizes an obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is generally a question of law for the court. *Helton v. Harbrecht*, 701 N.E.2d 1265, 1267 (Ind. Ct. App. 1998), *trans. denied*.

Relevant to our discussion is *Peters v. Forster*, 804 N.E.2d 736 (Ind. 2004), where our Supreme Court addressed a contractor's liability to third parties. In *Peters*, a contractor installed a wheelchair ramp at a homeowner's residence. The contractor knew that the ramp did not satisfy building code requirements. Following the installation, the homeowner's daughter attached some carpeting to the ramp. Peters, who was delivering meals to the residence, slipped on the ramp

and fell when he was leaving. Peters sued for his injuries, and the trial court granted the contractor's motion for summary judgment, which this court reversed on appeal. *Peters v. Forster*, 770 N.E.2d 414 (Ind. Ct. App. 2002). Our Supreme Court granted transfer and determined that Indiana no longer follows the "acceptance rule," which provides that contractors owe no duty of care to third parties after the owner has "accepted" the work. *Peters,* 804 N.E.2d at 738-39. Rather, it was determined that a contractor may be liable for injury or damage to a third person as a result of the condition of the work "*where it was reasonably foreseeable that a third party would be injured by such work caused by the contractor's negligence.*" *Id.* at 742 (emphasis added).

[14] Although Bradford contends that the rationale espoused in *Peters* should compel the same result here because Perez's injuries were reasonably foreseeable to Tri-Esco, we first note that it is undisputed that there was no two-inch snowfall during the two days prior to Perez's fall that would have triggered further services under the Agreement. Bradford did not request any salt application or additional snow removal from Tri-Esco within that timeframe, and Bradford's crew did not perform any additional snow removal during those two days. Further, Bradford admitted that it had no expectation for Tri-Esco to be on the premises at any time after February 21, 2015, and Bradford conceded that it was in a better position to know the actual condition of the property than Tri-Esco. Had Tri-Esco in some way created a dangerous condition on February 21, Bradford had two days to remedy such a circumstance through its own employees, or it could have requested Tri-Esco to apply additional salt to the affected areas. With no additional work having

been performed by Bradford, and no follow-up contact made to Tri-Esco for additional services, we cannot say that it was reasonably foreseeable to Tri-Esco that Perez would be injured two days after Tri-Esco completed its work. Thus, we reject Bradford's reliance on the rationale advanced in *Peters* in support of its contention that summary judgment was improperly entered for Tri-Esco.

[15] Additionally, the designated evidence establishes that Tri-Esco no longer maintained any control over the premises after the initial snow removal. Indeed, a defendant's duty to a plaintiff is often conditioned on his control of the premises at the time of the accident. *Rhodes v. Wright,* 805 N.E.2d 382, 385 (Ind. 2001); *Yates v. Johnson Co. Bd. of Comm'rs*, 888 N.E.2d 842, 847 (Ind. Ct. App. 2008). Control is the greatest factor because the law seeks to impose "liability on the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." *Rider v. McCamment,* 938 N.E.2d 262, 268 (Ind. Ct. App. 2010). The party in control is in the best position to prevent injury on the premises. *Id.*

[16] To illustrate, in *Kostidis v. General Cinema Corp.*, 754 N.E.2d 563 (Ind. Ct. App. 2001), *trans. denied,* the plaintiff was walking in a parking lot owned by the defendant who had hired Schostak Brothers to manage the property. Schostak Brothers in turn hired L&P to remove snow and ice from the parking lot. Pursuant to the contract, L&P was to remove snow from the parking lot after an inch or more of snow had fallen.

On January 31, 1996, L&P removed snow from the parking lot, which was the last time it rendered any of its services prior to the plaintiff's fall on February 2. A panel of this court concluded that L&P lacked control over the parking lot at the time of the fall, thereby precluding liability for the plaintiff's injuries. In so holding, the court stated

> While L&P had control over snow removal operations in the parking lot and on the sidewalks, *there is no evidence suggesting that L&P retained control over the premises once its work was completed.* . . . L&P's completion of its work and its relinquishment of any control it had over the property is . . . evidenced by the fact that Schostak Brothers's designated property inspector . . . *apparently found L&P's work satisfactory and did not ask L&P to return to perform additional services.*

*Id.* at 569 (emphases added).

As were the circumstances in *Kostidis,* Tri-Esco had no control over Bradford's parking lot at the time of the fall. It had not rendered services to Bradford in the two days prior to Perez's fall, was not on the property on the day of Perez's fall, and Bradford never requested that it return to provide any additional snow and ice removal. Moreover, nothing in the Agreement imposed a requirement on Tri-Esco to periodically inspect the property. To that end, absent any presence, control, or express request from Bradford that Tri-Esco be onsite or perform further snow removal, there is no basis on which to find that Tri-Esco owed a duty to Perez.

Finally, we reject Bradford's attempt to create a genuine issue of material fact in light of conflicting provisions in the Agreement. Even though there is a conflict in

facts and inferences on *some* elements of a claim, summary judgment may be proper when no dispute exists as to the facts that are dispositive of the litigation. *Helton*, 701 N.E.2d at 1268. Additionally, "[i]f necessary, the text of a disputed provision [in a contract] may be understood by reference to other provisions within the four corners of the document." *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013). Where a contract is ambiguous or uncertain in its terms, the intent of the parties must be determined by extrinsic evidence. *First Federal Sav. Bank v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind. 1990). Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations. *Id.*

[20] Here, the requirement that Tri-Esco receive specific authority from Bradford before applying salt or ice melt is found twice in the Agreement, as opposed to the provision stating that "[s]alting shall be performed without request as warranted by ice/snow conditions for all communities," which is only stated once. *Appellant's Appendix Vol II* at 70, 115, 165. Moreover, the parties' standard practice was that if there was a two-inch snowfall, Tri-Esco would go to Bradford—without an explicit request—to remove snow from the parking lots and driveways. Under paragraph seven of the initial proposal and the one page "snow removal specifications" in the Agreement, Tri-Esco would salt the driveways or parking lots *only* if Bradford specifically requested that it do so. *Appellant's Appendix Vol. II* at 48, 90, 113, 119. Bradford admitted that discretionary salt applications by Tri-Esco, as provided in paragraph ten of the multiple page specification, never occurred. Rather, the undisputed facts are that Tri-Esco salted only upon Bradford's explicit request that

it do so, which was pursuant to the parties' past performance. Hence, the conflicting provisions in the agreement do not create a genuine issue of material fact as to whether Tri-Esco should have applied salt and other snow removal services after February 21 without Bradford's request. For the foregoing reasons, we affirm the trial court's grant of summary judgment in Tri-Esco's favor.

Judgment affirmed.

Robb, J. and Bradford, J., concur.